1  MARK ROBBINS, State Bar No. 137159
     mrobbins@erlaw.com
2  CHRISTOPHER R. NELSON, State Bar No. 242859
     cnelson@erlaw.com
3  **EPPORT, RICHMAN & ROBBINS, LLP**
   1875 Century Park East, Suite 800
4  Los Angeles, California  90067-2512
   Telephone:   (310) 785-0885
5  Facsimile:    (310) 785-0787

6  Attorneys for WESTERN STATES GOLF
   ASSOCIATION

7

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 AGAPE FAMILY WORSHIP              CASE NO. 5:15-cv-01465-MMM-SP
   CENTER, INC., a New Jersey non-
12 profit corporation,               **DEFENDANT WESTERN STATES
                                     GOLF ASSOCIATION'S NOTICE
13            Plaintiff,             OF MOTION AND MOTION TO
                                     DISMISS PLAINTIFF'S FIRST
14      v.                           AMENDED COMPLAINT
                                     PURSUANT TO FED.
15 DONALD RICHARD GRIDIRON, JR.,     R. CIV. P. 12(b)(6)**
   and WESTERN STATES GOLF
16 ASSOCIATION, a California non-    Date:    February 1, 2016
   profit corporation,              Time:    10:00 a.m.
17                                   Crtrm.:  780
            Defendants.             Place:   255 East Temple Street,
18                                           Los Angeles, California 90012

19                                  [Filed Concurrently with Memorandum
                                    of Points and Authorities; Request for
20                                  Judicial Notice; Proposed Order]

21

22

23

24 **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

25      **PLEASE TAKE NOTICE** that on February 1, 2016, at 10:00 a.m. or as soon

26 thereafter as this matter may be heard, in Department 780 of the above-entitled

27 Court, located at 255 Temple Street, Los Angeles, California 90012, Defendant

28 Western States Golf Association ("WSGA") will move this Court for an Order

*(left margin vertical text)* EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

dismissing the First Amended Complaint (the "FAC") of Agape Family Worship Center, Inc. ("Agape" or "Plaintiff") in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 23, 2015.

This Motion is made upon the following grounds:

1.     All of Agape's claims against WSGA are barred because WSGA cannot be held vicariously liable for the acts of Defendant Donald Richard Gridiron, Jr. ("Gridiron") under the adverse interest exception to the corporate imputation rule, and because the doctrine of *respondeat superior* does not apply to acts of theft outside the scope of employment. *See, S. E. C. v. Seaboard Corp.*, 677 F.2d 1301, 1310 (9th Cir. 1982) (knowledge of acts adverse to corporation's interest not imputed to corporation); *Perry v. County of Fresno*, 215 Cal.App.4th 94, 101-02, 155 Cal.Rptr.3d 219, 224 (Cal.Ct.App. 2005) (acts outside scope of employment for purely personal reasons not subject to *respondeat superior* doctrine).

2.     All of Agape's claims against WSGA are barred because WSGA, as a fellow victim of Gridiron's fraud, cannot be held liable under any equitable tracing theory. *See, Cunningham v. Brown*, 265 U.S. 1, 13 (1926) (tracing inapplicable "when the fund with which the wrongdoer is dealing is wholly made up of the fruits of the frauds perpetrated against a myriad of victims"); *U.S. v. Wilson*, 659 F.3d 947, 956 (2011) ("courts generally will not indulge in tracing when doing so would allow one fraud victim to recover all of his losses at the expense of other victims"); *U.S. v. Real Property Located at 13328 and 13324 State Highway 75 North, Blaine County, Idaho*, 89 F.3d 551, 553-54 (upholding the same principle); *People v. California Safe Deposit & Trust Co.*, 175 Cal. 756, 762-63, 167 P. 388, 389-90 (Cal. 1917).

3.     All of Agape's claims against WSGA are each facially barred, at least in part if not in total, by the applicable statutes of limitations. *See,* Cal. Code Civ.

Epport, Richman & Robbins, LLP
1875 Century Park East, Suite 800
Los Angeles, California 90067-2512
Telephone (310) 785-0885 • Facsimile (310) 785-0787

1   Proc. §§ 335.1, 338(c), 339(1) (two-years for negligence and oral contract, three

2   years for conversion); Cal. Pen. Code § 801 (three-years for receipt of stolen

3   property).  Agape's allegations of fraudulent concealment, estoppel, the discovery

4   rule, and equitable tolling are not pled sufficiently, and fail to state a claim.  Fed. R.

5   Civ. P. 9(b); *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2003); *Conerly v.*

6   *Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

7          4.      Agape's third cause of action for negligence fails because WSGA had

8   no duty to Agape under the economic loss rule.  *Quelimane Co., Inc. v. Stewart Title*

9   *Guaranty Co.*, 19 Cal.4th 26, 58 (Cal.Ct.App. 1998).

10         5.      Agape's fourth cause of action for conversion fails because it is a

11  generalized claim for conversion of money that does not identify a specific,

12  identifiable sum, and because WSGA was an unknowing mere conduit of funds that

13  ultimately went into the hands of Defendant Donald Richard Gridiron, Jr.  *See*,

14  *Sanowicz v. Bacal*, 234 Cal.App.4th 1027, 184 Cal.Rptr.3d 517, 529 (Cal.Ct.App.

15  2015); *Simonian v. Patterson,* 27 Cal.App.4th 773, 781, 32 Cal.Rptr.2d 722, 726-27

16  (Cal.Ct.App. 1994) (mere conduit not liable for conversion).

17         6.      Agape's fifth cause of action for money had and received fails because

18  Agape admits that WSGA did not have knowledge of Agape's failure to monitor its

19  own accounts, WSGA had no reason to suspect that Agape had failed to monitor its

20  own accounts and WSGA relied to its detriment on Agape's failure to monitor its

21  own accounts under Agape's own allegations.  *Ghirardo v. Antonioli*, 14 Cal.4th 39,

22  51, 924 P.2d 996, 1003 (Cal. 1996).  Further, Agape admits that it has failed to do

23  equity, barring relief.  *McQuiddy v. Ware*, 87 U.S. 14, 19 (1873); *In re Gardenhire*,

24  209 F.3d 1145, 1152 fn. 11 (9th Cir. 2000).

25         7.      Agape's sixth cause of action for unjust enrichment fails because unjust

26  enrichment does not lie as an independent claim if another quasi-contract cause of

27  action is available to permit restitutionary damages.  *Astiana v. Hain Celestial*

28  *Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  In this case, Agape's money had

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   and received claim is redundant with its unjust enrichment claim. *See, Warren v.*

2   *Lawler,* 343 F.2d 351, 360 (9th Cir. 1965) (money had and received is quasi-

3   contract claim).

4        8.    Agape's seventh cause of action for receipt of stolen property [Cal.

5   Pen. Code § 496(c)] fails because Agape admits that WSGA did not have

6   knowledge of the actions of Defendant Donald Richard Gridiron, Jr. *People v.*

7   *Tessman*, 223 Cal.App.4th 1293, 1302, (Cal.Ct.App. 2014).

8        This Motion will be based upon this Notice of Motion and Motion; the

9   attached Memorandum of Points and Authorities; the Request for Judicial Notice

10   filed herewith; the pleadings and records relating to this action; and such other and

11   further written and oral evidence as may be presented in connection with the hearing

12   on this Motion.

13        If you wish to oppose this Motion, you must file a written opposition with the

14   above-entitled Court no later than January 11, 2016.

15

16   DATED: October 9, 2015       EPPORT, RICHMAN & ROBBINS, LLP

17             By: _____/s/_____

18               CHRISTOPHER R. NELSON

19             Attorneys for WESTERN STATES GOLF
               ASSOCIATION

20

21

22

23

24

25

26

27

28

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. SUMMARY OF ALLEGATIONS ........................................................... 2

III. STANDARDS OF REVIEW .................................................................... 4

    A.    Federal Rule of Civil Procedure 12(b)(6) ...................................... 4

    B.    Federal Rule of Civil Procedure 8(a) ............................................. 4

    C.    Federal Rule of Civil Procedure 9(b) ............................................ 5

IV. DISCUSSION ............................................................................................ 5

    A.    WSGA Cannot Be Liable Under Any Theory of Vicarious Liability ............................................................................................. 5

        1.    Agape Cannot Impute Gridiron's Knowing Acts to WSGA Under the Adverse Interest Exception to the Corporate Imputation Rule ............................................................ 6

        2.    Agape Cannot Impute Gridiron's Knowing Acts to WSGA Under the Doctrine of Respondeat Superior ................................ 7

    B.    WSGA Cannot Be Held Liable Under Any Equitable Tracing Theories As a Matter of Law ......................................................... 9

    C.    The FAC Violates the Applicable Statutes of Limitations, and the Allegations Supporting Tolling Theories are Legally and Factually Insufficient to State a Claim ...................................... 10

        1.    The FAC Fails to Plead Fraudulent Concealment With Specificity .......................................................................... 11

        2.    The FAC Fails to Allege Acts by WSGA Justifying Equitable Estoppel ......................................................... 12

        3.    The FAC Fails to Allege Agape's Reasonable Diligence in Discovering its Purported Claims to Justify Delayed Discovery ........................................................................... 13

        4.    The FAC Fails to Allege Any Facts Justifying Equitable Tolling ................................................................................ 14

    D.    Agape's Third Cause of Action for Negligence is Barred Under the Economic Loss Rule ............................................................... 14

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

E.   Agape's Fourth Cause of Action for Civil Theft/Conversion Fails Because It Does Not Involve a Specific, Identifiable Sum, and Because WSGA Was a Mere Conduit ...................................................16

   1.   Agape Has Failed to Allege a Specific, Identifiable Sum of Money to Support Its Conversion Claim ......................................17

   2.   WSGA Was a Mere Conduit, and Therefore, Never Possessed or Controlled Agape's Money .....................................18

F.   Agape's Fifth Cause of Action for Money Had and Received Fails Because WSGA Did Not Benefit From or Know About Gridiron's Acts............................................................................19

   1.   WSGA Did Not Receive the Benefit of the Funds ......................20

   2.   Even If WSGA Allegedly Received a Benefit, the Allegations in the FAC Demonstrate That Its Retention of the Benefit Would Not Be Unjust.................................................20

   3.   Agape's Money Had and Received Claim is Barred Because of Agape's Failure to do Equity.................................................21

G.   Agape's Sixth Cause of Action Fails Because Unjust Enrichment is Not an Independent Claim..................................................22

H.   Agape's Seventh Cause of Action for Receipt of Stolen Property Fails Because Agape Admits That WSGA Did Not Possess Actual Knowledge..................................................................23

V.   CONCLUSION.............................................................................25

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page

## CASES

*Abbott v. Limited Mut. Compensation Ins. Co.*, 30 Cal.App.2d 157, 163 (Cal.Ct.App. 1938) ........................................................................................6

*Addison v. State*, 21 Cal.3d 313, 317, 578 P.2d 941, 943 (Cal. 1978) ......................14

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1199, 292 P.3d 871, 880 (Cal. 2013) ........................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..........................................................5, 11

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) .........22, 23

*Avidor v. Sutter's Place, Inc.*, 212 Cal.App.4th 1439, 1454, 151 Cal.Rptr.3d 804, 816 (Cal.Ct.App. 2013) ..............................................................19, 20, 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................................4, 5

*Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F.Supp.2d 940, 955-56 (N.D.Cal. 2014) ........................................................10

*Butcher v. Gay*, 29 Cal.App.4th 388, 399-400, 34 Cal.Rptr.2d 771, 776-77 (Cal.Ct.App. 1994) ......................................................................................15

*Butler v. National Community Renaissance of California*, 766 F.3d 1191, 1204 (9th Cir. 2014) ......................................................................................14

*Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652, 656 171 P.2d 5, 8 (Cal. 1946) .............7

*Carson v. Federal Reserve Bank of New York*, 254 N.Y. 218, 172 N.E. 475 (N.Y. 1930) .........................................................................................18, 19

*Cement & Concrete Workers District Council Pension Fund v. Hewlett Packard Company*, 964 F.Supp.2d 1128, (N.D.Cal. 2013) ............................6

*City of Hope Nat. Medical Center v. Superior Court*, 8 Cal.App.4th 633, 637, 10 Cal.Rptr.2d 465, 467 (Cal.Ct.App. 1992) ....................................21

*Commercial Lumber Co. v. Ukiah Lumber Mills*, 94 Cal.App.2d 215, 220-21 (Cal.Ct.App. 1949) ........................................................................................6

*Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980)...............12

*Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) .........................................5, 12

*Cunningham v. Brown*, 265 U.S. 1, 13 (1926) ........................................................10

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

*Dickson, Carlson & Campillo v. Pole*, 83 Cal.App.4th 436, 446, 99
Cal.Rptr.2d 678, 685 (Cal.Ct.App. 2000) ......................................................22

*Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d
682, 670 (Cal.Ct.App. 2010) ..........................................................................23

*First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1664, 15
Cal.Rptr.2d 173, 177 (Cal.Ct.App. 1992) ......................................................21

*Fromberg v. Department of Alcoholic Beverage Control of Cal.*, 169
Cal.App.2d 230, 233, 337 P.2d 123, 125 (Cal.Ct.App. 1959) ........................6

*Funk v. Tifft*, 515 F.2d 23, 26 (9th Cir. 1975) ......................................................6

*Ghirardo v. Antonioli*, 14 Cal.4th 39, 51, 924 P.2d 996, 1003 (Cal. 1996)..............20

*Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)........................................4

*Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2003) ......................................12

*Gutierrez v. Girardi*, 194 Cal.App.4th 925, 937, 125 Cal.Rptr.3d 210, 219
(Cal.Ct.App. 2011) ........................................................................................20

*Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal.4th 809, 815, 23
P.3d 601, 604 (Cal. 2001)...............................................................................11

*Insurance Company of North America v. Federal Express*, 189 F.3d 914, 922
(9th Cir. 1999) ..............................................................................................7, 8

*Jogani v. Superior Court*, 165 Cal.App.4th 901, 911, 81 Cal.Rptr.3d 503, 511
(Cal.Ct.App. 2008) ........................................................................................23

*Jones v. Bock*, 549 U.S. 199, 215 (2007)..............................................................22

*Kim v. Westmoore Partners, Inc.*, 201 Cal.App.4th 267, 284-85, 133
Cal.Rptr.3d 774, 789 (Cal.Ct.App. 2011) ......................................................17

*Lantzy v. Centex Homes*, 31 Cal.4th 363, 383, 73 P.3d 517, 532 (Cal.Ct.App.
2003).............................................................................................................12

*Lauriedale Associates, Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9
Cal.Rptr.2d 774, 780 (Cal.Ct.App. 1992) ......................................................23

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)..........................9

*Levine v. Blue Shield of California*, 189 Cal.App.4th 1117, 1138, 117
Cal.Rptr.3d 262, 278-79 (Cal.Ct.App. 2010)..................................................23

*Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991).........................4

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296, 907
P.2d 358, 360 (Cal. 1995)................................................................................7

*Mains v. City Title Ins. Co.*, 34 Cal.2d 580, 586, 212 P.2d 873, 876 (Cal.
1949)...........................................................................................................22

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

iv

*McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 100, 194 P.3d 1026, 1031 (Cal. 2008) ................................................................14

*McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1490, 49 Cal.Rptr.3d 227, 255 (Cal.Ct.App. 2006) ...............................................23

*McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1491, 49 Cal.Rptr.3d 227, 255 (Cal.Ct.App. 2006) ...............................................17

*McQuiddy v. Ware*, 87 U.S. 14, 19 (1873); *In re Gardenhire*, 209 F.3d 1145, 1152 fn. 11 (9th Cir. 2000) ..........................................................22

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 794, 131 Cal.Rptr.2d 347, 357 (Cal.Ct.App. 2003) .......................................23

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) .....................16

*Nguyen v. Western Digital Corp.*, 229 Cal.App.4th 1522, 1553, 177 Cal.Rptr.3d 897, 924 (Cal.Ct.App. 2014) ...............................................13

*Oregon & C.R. Co. v. Grubissich*, 206 F. 577, 581 (9th  Cir. 1917) ........................6

*Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001) .....................................................4

*Pamela W. v. Millson*, 25 Cal.App.4th 950, 956, 30 Cal.Rptr.2d 690, 693 (Cal.Ct.App. 1994) .................................................................................14

*People v. California Safe Deposit & Trust Co.*, 175 Cal. 756, 762-63, 167 P. 388, 389-90 (Cal. 1917) ........................................................................10

*People v. Stuart*, 272 Cal.App.2d 653, 654, 77 Cal.Rptr. 531, 532 (Cal.Ct.App. 1969) .................................................................................24

*People v. Tessman*, 223 Cal.App.4th 1293, 1302, 168 Cal.Rptr.3d 29, 35 (Cal.Ct.App. 2014) .................................................................................24

*Perry v. County of Fresno*, 215 Cal.App.4th 94, 101-02, 155 Cal.Rptr.3d 219, 224 (Cal.Ct.App. 2005) ...........................................................................7

*Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797, 250 P.3d 181, 191 (Cal.Ct.App. 2011) .................................................................................13

*Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal.App.4th 1105, 1135, 167 Cal.Rptr.3d 832, 857 (Cal.Ct.App. 2014) .............................16

*Quelimane Co, Inc. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 58, 960 P.2d 513, 532 (Cal. 1998) ..............................................................15

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984) ...........4

*Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) ........................................................................................12

*S. E. C. v. Seaboard Corp.*, 677 F.2d 1301, 1310 (9th Cir. 1982) ............................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

*Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) .........................22

*Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, 168 Cal.App.2d 191, 204-05, 335 P.2d 995, 1004 (Cal.Ct.App. 1959) ........................................................6

*Sanowicz v. Bacal*, 234 Cal.App.4th 1027, 1042, 184 Cal.Rptr.3d 517, 529 (Cal.Ct.App. 2015) ...................................................................16, 17

*Simonian v. Patterson,* 27 Cal.App.4th 773, 32 Cal.Rptr.2d 722 (Cal.Ct.App. 1994) .....................................................................................18, 19

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 485, 56 Cal.Rptr.2d 756, 765 (Cal.Ct.App. 1996) ........................18

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).....................9

*Steele v. Marsicano*, 102 Cal. 666, 36 P. 920 (Cal. 1894) .............................18

*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Company*, 27 Cal.4th 705, 715, 41 P.3d 548, 554 (Cal. 2002)..................................15

*U.S. v. Real Property Located at 13328 and 13324 State Highway 75 North, Blaine County, Idaho*, 89 F.3d 551, 553-54 (9th Cir. 1996).........................10

*U.S. v. Wilson*, 659 F.3d 947, 956 (2011)...................................................10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ......................5

*Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 235, 68 Cal.Rptr.2d 31, 34-35 (Cal.Ct.App. 1997)..........................................17

*Warren v. Lawler,* 343 F.2d 351, 360 (9th Cir. 1965)..................................10, 20

*Whittier v. Home Sav. Bank of Los Angeles*, 161 Cal. 311, 319, 119 P. 92, 96 (Cal. 1911) ............................................................................20

## STATUTES

Cal. Civ. Code § 2338 .....................................................................7

Cal. Civ. Code § 2339 .....................................................................7

Cal. Code Civ. Proc. § 335.1 .............................................................11

Cal. Code Civ. Proc. § 338(c) ............................................................11

Cal. Code Civ. Proc. § 339(1) ............................................................11

Cal. Pen. Code § 496......................................................................24

Cal. Pen. Code § 496(a) ..................................................................23

Cal. Pen. Code § 801 .....................................................................11

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6)...........................................................................4

Fed. R. Civ. P. 8(a)(2)..........................................................................4, 8

Fed. R. Civ. P. 9(b) ................................................................................5

Fed. R. Civ. P. 9(b); .............................................................................12

**<u>TREATISES</u>**

Rest., Restitution, § 1 ...........................................................................20

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiff Agape Family Worship Center, Inc. ("Plaintiff" or "Agape") and Defendant Western States Golf Association ("WSGA") were both innocent victims of embezzlement and fraud by Defendant Donald Richard Gridiron, Jr. ("Gridiron"). As alleged in the First Amended Complaint ("FAC"), Gridiron assumed positions of financial trust with both Agape and WSGA, and then asserted financial control over both entities.  Agape's FAC alleges that its claims arise, in part, from Gridiron's "funneling of approximately $1.9 million of the stolen money through the WSGA," and indeed, that is precisely what happened: all $1.9 million of Agape's money, along with much of WSGA's own money, went into the hands of Gridiron.  While Agape was already provided with comprehensive evidence in its previous bankruptcy adversary proceeding which completely exonerates WSGA of any wrongdoing, Agape again prosecutes its claims in a new forum, in hopes of further victimizing WSGA.

The FAC fails to state a claim against WSGA.  The FAC alleges several claims which require actual knowledge of wrongdoing, yet it expressly states that WSGA was <u>unaware</u> of Gridiron's activities with WSGA's bank account.  The FAC alleges negligence against WSGA, even though WSGA had <u>no duty</u> to assist Agape in avoiding economic loss.  The FAC also alleges common counts against WSGA which are <u>unsupported</u> by the facts pled in the FAC.  The FAC is <u>time-barred</u>, at least in part, as some or all of the purportedly tortious activity took place well-outside of the relevant statutes of limitations, and the FAC offers no factual justification for tolling the limitations periods.  Finally, the FAC includes evidence that Gridiron admits that he stole from both Agape and WSGA, barring any and all recovery for Agape under the FAC.

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   The FAC is fatally defective, and therefore, it should be dismissed.

2   Moreover, Agape should be required to plead facts supporting its alleged tolling

3   theories with particularity if the Court allows Agape to amend the FAC.[1]

4   ## II.

5   ## SUMMARY OF ALLEGATIONS

6   Agape alleges that Gridiron was hired as its accountant and employee in

7   1992.  FAC, p. 3:7-11.  When Agape's chief financial officer left the company in

8   2007, Gridiron assumed control over "most church financial matters[,]" and

9   continued providing the services he previously provided.  *Id.* at p. 3:14-16.  The

10  FAC alleges that Gridiron then systematically stole more than $4.8 million from

11  Agape from 2007 to March of 2014 through approximately 800 separate

12  transactions, by drafting unauthorized checks to himself and third parties, and

13

14  [1] This case already has an extensive procedural history.  Agape sued WSGA eight

15  months after its discovery of Gridiron's theft in a bankruptcy adversary proceeding

16  in Gridiron's Chapter 7 bankruptcy.  As part of a cooperative good faith effort,
    WSGA subpoenaed its own bank records and voluntarily provided them to Agape.

17  The records demonstrate that from 2007 to 2014, Gridiron stole over $1.8 million

18  from the WSGA in the form of cash withdrawals (using ATMs identified by these
    statements to be located inside of casino addresses for over $1.2 million of these

19  withdrawals), and over $875,000 in the form of checks written either to himself or

20  "cash."  Even if Gridiron's periodic cash deposits into the WSGA account are
    credited as offsets for Gridiron's thefts from WSGA, he still managed to steal, at

21  minimum, $348,449.55 from WSGA from 2007 to 2014.  WSGA's operating

22  expenses never exceeded its actual revenue.  Instead, WSGA's account was drawn

23  down by Gridiron's thefts.  The final Agape deposit into WSGA's account was for
    $3,500 on February 18, 2014.  By March 1, 2014, Gridiron's thefts had overdrawn

24  WSGA's account, which had once held a significant surplus of WSGA's own funds,

25  to -$3,111.97.  The plea agreement attached to the FAC as Exhibit "A" demonstrates
    that Gridiron admits that he stole money from WSGA as well as Agape, and that

26  WSGA did not benefit from Gridiron's fraudulent actions.  WSGA only adds this

27  footnote in order to demonstrate that any offer of proof in support of amendment to
    the FAC will be legally insufficient and frivolous.

28

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1  sending unauthorized wire transfers to himself.  *Id.* at pp. 4:24-27, 5:11-14.  Agape

2  became aware of Gridiron's theft in March of 2014, when Gridiron confessed to

3  Agape's pastor that he had stolen money from Agape.  *Id.* at pp. 4:28-5:2.  Gridiron

4  filed for bankruptcy in 2014, "weeks after" he confessed to Agape.  *Id.* at p. 5:17-18.

5      The FAC alleges that Gridiron structured his thefts by diverting Agape funds

6  to three parties, in the following manner: more than $3,000,000 directly to Gridiron,

7  approximately $40,000 to Gridiron's personal American Express account, and more

8  than $1,900,000 to WSGA.  *Id.* at p. 5:12-14.  For its part, Agape alleges that it was

9  completely unaware of WSGA's relationship with Mr. Gridiron: "Unbeknownst to

10  AFWC during the relevant time period, Gridiron was an active member and officer

11  of the WSGA." *Id.* at p. 4:1-2.  With respect to WSGA's purported "participation"

12  in Gridiron's fraud, the FAC alleges that Gridiron was responsible for the

13  "funneling of approximately $1.9 million of the stolen money through the

14  WSGA[.]"  *Id.* at pp. 1:26-2:1.  Agape further alleges that, "Gridiron had exclusive

15  access and control of the WSGA's bank accounts and bank statements and

16  conducted all banking activities on behalf of the WSGA.  Upon information and

17  belief, no WSGA representative, other than Gridiron, ever reviewed the bank

18  statements of the WSGA during the relevant time period." *Id.* at p. 4:15-18.

19  Gridiron later admitted in his bankruptcy schedules that he owned $4.8 million in

20  "Gambling Winnings," which the FAC notes was "almost the exact amount that

21  AFWC identified as funds stolen from it by Gridiron." *Id.* at p. 5:18-20.  In other

22  words, all of the funds allegedly stolen by Gridiron were funneled through WSGA,

23  without its knowledge, right back to Gridiron.

24      Agape also attaches and incorporates by reference Gridiron's plea agreement

25  to the FAC.  FAC, p. 2:27, Ex. "A."  In the plea agreement, Gridiron admits that he,

26  "did knowingly devise and intend to devise a scheme and artifice to defraud the

27  Worship Center and the Foundation, and to obtain money and property from the

28  Worship Center and the Foundation by means of materially false and fraudulent

1   pretenses, representations, and promises[.]"  (FAC, Ex. "A," ¶ 2.)  Gridiron's plea

2   agreement—whose veracity is not disputed by  Agape—admits that Gridiron stole

3   money from both Agape and WSGA, and that WSGA did not benefit from any

4   stolen funds acquired by Gridiron.  FAC, Ex. "A."

### III.

### STANDARDS OF REVIEW

**A.      Federal Rule of Civil Procedure 12(b)(6)**

8           Under Federal Rule of Civil Procedure 12(b)(6), a complaint is appropriately

9   dismissed when it "appears beyond doubt that the plaintiff can prove no set of facts

10  in support of his claim which would entitle him to relief."  *Levine v. Diamanthuset,*

11  *Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991).  A complaint may be dismissed as a

12  matter of law for two reasons: (1) lack of a cognizable legal theory, or (2)

13  insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds,*

14  *Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In reviewing a motion to dismiss pursuant

15  to Rule 12(b)(6), the court must assume the truth of all factual allegations and must

16  construe them in the light most favorable to the nonmoving party.  *Gompper v.*

17  *VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).  However, conclusory legal

18  allegations and unwarranted inferences are insufficient to defeat a motion to dismiss.

19  *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

**B.      Federal Rule of Civil Procedure 8(a)**

21          Under Fededal Rule of Civil Procedure 8(a)(2), a complaint must contain a

22  "short and plain statement of the claim showing that the pleader is entitled to relief."

23  As the Supreme Court has explained, "without some factual allegation in the

24  complaint, it is hard to see how a claimant could satisfy the requirement of

25  providing not only 'fair notice' of the nature of the claim, but also 'grounds' on

26  which the claim rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

27          Under Rule 8(a) "to survive a motion to dismiss, a complaint must contain

28  sufficient factual matter, accepted as true, to state a claim to relief that is plausible

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

1   on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more

2   than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Stated

3   differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his

4   'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for

5   which] a formulaic recitation of the elements of a cause of action will not do."

6   *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders naked

7   assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.  Thus, a

8   complaint cannot simply "le[ave] open the possibility that a plaintiff might later

9   establish some 'set of undisclosed facts' to support recovery."  *Twombly*, 550 U.S.

10  at 561.  Rather, the facts set forth in a plaintiff's complaint must be sufficient to

11  "nudge their claims across the line from conceivable to plausible."  *Id.* at 570.

12  **C.**      **Federal Rule of Civil Procedure 9(b)**

13          "In alleging fraud or mistake, a party must state with particularity the

14  circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Averments of

15  fraud must be accompanied by the "who, what, when, where, and how" of the

16  purported misconduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)

17  (internal quotations omitted).  Claims that do not specifically allege fraud by name,

18  but which are still "grounded in fraud," must be pled with particularity.  *Vess v.*

19  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

20                                               **IV.**

21                                     **DISCUSSION**

22          Agape has asserted five claims against WSGA: negligence, civil

23  theft/conversion, money had and received, unjust enrichment, and receipt of stolen

24  property [California Penal Code Section 496(c)].  Each of these claims fails.

25  **A.**      **WSGA Cannot Be Liable Under Any Theory of Vicarious Liability**

26          Agape's theories in the FAC are primarily founded upon the notion that

27  WSGA is charged with awareness of Gridiron's acts by virtue of his position as

28  treasurer of WSGA.  Agape's own allegations show that this contention is false.

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1.   <u>Agape Cannot Impute Gridiron's Knowing Acts to WSGA Under the Adverse Interest Exception to the Corporate Imputation Rule</u>

Agape erroneously maintains that, by virtue of Gridiron's position as an officer of WSGA, his knowledge of his own criminal conduct harming WSGA is imputed to WSGA.  A corporate officer's knowledge of his own fraudulent acts against the corporation is not imputed to the corporation under the "adverse interest" exception to the imputation rule.  *S. E. C. v. Seaboard Corp.*, 677 F.2d 1301, 1310 (9th Cir. 1982); *Oregon & C.R. Co. v. Grubissich*, 206 F. 577, 581 (9th  Cir. 1917); *Cement & Concrete Workers District Council Pension Fund v. Hewlett Packard Company*, 964 F.Supp.2d 1128, (N.D.Cal. 2013); *see also, Funk v. Tifft*, 515 F.2d 23, 26 (9th Cir. 1975) (adverse interest exception applicable in cases of director theft and fraud against the corporation).  Further, a corporate officer or director's knowledge of activity in which he has a self-interest, irrespective of whether that interest is adverse to the corporation, is also not imputed to the corporation. *Commercial Lumber Co. v. Ukiah Lumber Mills*, 94 Cal.App.2d 215, 220-21 (Cal.Ct.App. 1949); *Abbott v. Limited Mut. Compensation Ins. Co.*, 30 Cal.App.2d 157, 163 (Cal.Ct.App. 1938).

Further, since Agape admits that it willingly ceded all financial control of its organization to Gridiron, all information regarding the status of Agape's accounts would necessarily be within the ambit of Gridiron's knowledge as an agent of Agape.  Just as with corporate officers, under California corporate and agency law, the knowledge of any agent acting within the scope of his duties is imputed to the corporation.  *Fromberg v. Department of Alcoholic Beverage Control of Cal.*, 169 Cal.App.2d 230, 233, 337 P.2d 123, 125 (Cal.Ct.App. 1959); *Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, 168 Cal.App.2d 191, 204-05, 335 P.2d 995, 1004 (Cal.Ct.App. 1959).  In other words, imputed knowledge under principles of agency is a two-way street, and Agape cannot maintain its ignorance while insisting that WSGA be held to a higher standard.

Epport, Richman & Robbins, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA  90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

2. <u>Agape Cannot Impute Gridiron's Knowing Acts to WSGA Under the Doctrine of *Respondeat Superior*</u>

The doctrine of *respondeat superior* imposes vicarious liability upon an employer for the torts committed by its employees in the scope of their employment. *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296, 907 P.2d 358, 360 (Cal. 1995). This doctrine has been codified in California under principles of agency law under California Civil Code section 2338 and 2339. However, while a willful, malicious and even criminal act may fall within the scope of employment for purposes of *respondeat superior*, the employer is not liable for an intentional tort that did not have a causal nexus to the employee's work. *Lisa M.*, at 297-87, 907 P.2d at 361. Where an employee inflicts injury out of personal malice not engendered by his employment, the employer cannot held liable as a matter of law. *Lisa M.,* at 298, 907 P.2d at 361; *Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652, 656 171 P.2d 5, 8 (Cal. 1946). An employee who abuses job-created authority to the detriment of others for purely personal reasons is not acting within the scope of his employment, and his actions are not "broadly incidental to the enterprise" undertaken by the employer. *Perry v. County of Fresno*, 215 Cal.App.4th 94, 101-02, 155 Cal.Rptr.3d 219, 224 (Cal.Ct.App. 2005).

The case of *Insurance Company of North America v. Federal Express*, 189 F.3d 914, 922 (9th Cir. 1999), is instructive. In *Federal Express*, a Federal Express employee stole a shipment of computer memory modules worth over $400,000.00 during the international shipping process. In addressing the question of whether the doctrine of *respondeat superior* doctrine would impute vicarious liability for the theft to Federal Express, the Ninth Circuit held, "[w]e conclude that the California case law provides the answer with a resounding no." *Id.* at 922. The Court reasoned that acts done solely for one's personal benefit are rarely engendered by the employer in a manner that would give rise to vicarious liability are less likely to serve the employer in some way. *Id.* The Court determined that the employee's

Epport, Richman & Robbins, LLP
1875 Century Park East, Suite 800
Los Angeles, California 90067-2512
Telephone (310) 785-0885 • Facsimile (310) 785-0787

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   theft did not serve Federal Express in any way, and noted that the theft only harmed

2   Federal Express by exposing it to potential loss of business, damage to its

3   reputation, legal fees, and other harms associated with employee theft.  *Id.*  The

4   Court further noted that the fact that Federal Express' employment brought the thief

5   and the victim together is not enough to trigger *respondeat superior* liability, noting

6   that the theft represented a "substantial deviation" from the duties of the employee

7   that benefited only the employee, and not Federal Express.  *Id.* at 922-23.

8   Just as in *Federal Express*, it is difficult to imagine how thefts like those

9   perpetrated by Gridiron could ever be consistent with, or incident to, a corporate

10  treasurer's duties.  Gridiron's thefts occurred without WSGA having any reason to

11  know that they were occurring.  FAC, p. 4:15-23.  It is certainly not "typical of or

12  broadly incidental to the actions of a Treasurer of a non-profit corporation" to steal

13  money from other organizations. *Contra,* FAC, p. 4:21-23.[2]  Such behavior can

14  never be engendered by any legitimate organization.

15  Moreover, under the facts alleged, Gridiron was not operating as an officer of

16  WSGA when he stole from Agape.  Indeed, the FAC alleges ignorance of WSGA's

17  existence during the relevant times: "Unbeknownst to AFWC, Gridiron was an

18  active member and officer of the WSGA."  FAC, p. 4:1-2.  If there was any

19  employer-employee relationship providing a causal nexus to the alleged thefts, it

20  was between Agape and Gridiron.  Gridiron's position within WSGA did not allow

21  him to access Agape's funds.  Rather, when Gridiron stole from Agape, he did so by

22  abusing his employment with Agape.  Indeed, most of the theft alleged by Agape

23  occurred completely independently of WSGA's purported involvement: Gridiron

24

25  [2] Because this allegation is a conclusion unsupported by any facts (and indeed, is
    contradicted by the other allegations in the pleading), it does not satisfy the pleading
26  requirements under Federal Rule of Civil Procedure 8(a)(2).  *See, Iqbal,* 556 U.S. at
27  678-79 (federal courts not bound to accept conclusions couched as facts).

28

1    stole nearly $3 million from Agape in excess of what he funneled through WSGA,

2    using instrumentalities completely outside of WSGA.  Gridiron's unauthorized use

3    of WSGA's bank account was therefore not engendered by WSGA.

4    **B.    WSGA Cannot Be Held Liable Under Any Equitable Tracing Theories**

5    **As a Matter of Law**

6         The FAC alleges that Agape "utilized a portion of the funds received from

7    AFWC to pay for its routine operating expenses when its cash flow from

8    membership dues and its golf tournament was not sufficient to cover such

9    expenses."  *Id.,* p. 5:14-16.  However, the plea agreement attached as Exhibit "A"

10   admits that "the object of the scheme and artifice to defraud was for Defendant

11   GRIDIRON to enrich himself by embezzling money from the Worship Center and

12   the Foundation."  FAC, Ex. "A," p. 3, ¶ 3.  Gridiron cannot have been both

13   enriching WSGA and victimizing it at the same time, and Exhibit "A" to Agape's

14   FAC admits that Gridiron stole from WSGA and stole from Agape for the purpose

15   of enriching himself, contradicting Agape's contention that WSGA could have

16   benefited from the theft.  Courts need not accept as true allegations contradicting

17   documents that are referenced in the complaint.  *Lazy Y Ranch Ltd. v. Behrens*, 546

18   F.3d 580, 588 (9th Cir. 2008).  "We have held that a plaintiff can…plead himself

19   out of a claim by including unnecessary details contrary to his claims." *Sprewell v.*

20   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

21        Agape alleges that WSGA "utilized" a portion of the funds that were funneled

22   through its account, in an attempt to impose liability on WSGA through equitable

23   tracing.  *See,* FAC, p. 5:14-16.  The allegations that the funds were both "funneled

24   through" the account but also "utilized" by WSGA before Gridiron removed those

25   funds from the account necessarily imply that WSGA is subject to liability under a

26   theory of equitable tracing of the funds in the account.  However, equitable tracing

27   as between victims of fraud is expressly forbidden under Supreme Court, Ninth

28   Circuit and California Supreme Court authority.  *See, e.g., Cunningham v. Brown,*

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

265 U.S. 1, 13 (1926) (equitable tracing under lowest intermediate balance rule inapplicable "when the fund with which the wrongdoer is dealing is wholly made up of the fruits of the frauds perpetrated against a myriad of victims"); *U.S. v. Wilson*, 659 F.3d 947, 956 (2011) ("courts generally will not indulge in tracing when doing so would allow one fraud victim to recover all of his losses at the expense of other victims"); *U.S. v. Real Property Located at 13328 and 13324 State Highway 75 North, Blaine County, Idaho*, 89 F.3d 551, 553-54 (9th Cir. 1996) (upholding the same principle); *People v. California Safe Deposit & Trust Co.*, 175 Cal. 756, 762-63, 167 P. 388, 389-90 (Cal. 1917) (upholding the same principle).

Any recovery Agape could receive would come at the expense of WSGA, which has already been victimized by Gridiron's fraud as demonstrated in Exhibit "A" to the FAC.  The plea agreement also shows that WSGA never received the benefit from a dime of Agape's money.  Had it not been for Gridiron's fraud, WSGA would not have been subject to any losses at all.  The holding of *Cunningham* itself states that, "Equality is equity."  *Id.* at 13.  However, Agape seeks to impose equitable doctrines of tracing in order to procure an inequitable result against WSGA, a fellow victim, in order to enrich itself to the detriment of another party in precisely the same equitable position.  This is not the law, and the plea agreement attached to the FAC is fatal to Agape's case against WSGA.

## C.   **The FAC Violates the Applicable Statutes of Limitations, and the Allegations Supporting Tolling Theories are Legally and Factually Insufficient to State a Claim**

The FAC alleges that Agape was damaged by WSGA's actions that occurred over a seven-year period.  These claims are each facially barred, at least in part if not in total, by the applicable statutes of limitations.  *See, e.g., Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir. 1965) (two-year limitation for money had and received); *Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F.Supp.2d 940, 955-56 (N.D.Cal. 2014) (two-year limitation for unjust enrichment);

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   Cal. Code Civ. Proc. § 335.1 (two-year limitation for negligence); Cal. Code Civ.

2   Proc. § 339(1) (two-year limitation for oral contract); Cal. Pen. Code § 801 (three-

3   year limitation for receipt of stolen property);  Cal. Code Civ. Proc. § 338(c) (three-

4   year limitation for conversion).  Each claim accrued when the final element was

5   completed, and Agape had the right to sue.  *Howard Jarvis Taxpayers Ass'n v. City*

6   *of La Habra*, 25 Cal.4th 809, 815, 23 P.3d 601, 604 (Cal. 2001).  Where multiple

7   instances of liability occur on a recurring basis, each claim arises on a last element

8   accrual basis, and each actionable wrong—in this case, each deposit into WSGA's

9   bank account—is treated as an independently actionable wrong with its own time

10  limit for recovery, and only damages arising from breaches within the actionable

11  period are recoverable.  *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185,

12  1199, 292 P.3d 871, 880 (Cal. 2013).

13           Agape identifies that Gridiron stole a total amount of approximately $4.8

14  million during a seven year period, but fails to specify when the alleged thefts

15  occurred or if any of the thefts purportedly funneled through WSGA's bank

16  accounts occurred within the relevant two-or-three year time period.  Because the

17  FAC fails to specify the dates and amounts of the allegedly illegal transactions, or

18  any facts supporting its tolling theories, the FAC fails to include a showing of

19  plausible liability, and therefore, fails to state a claim.  *See, Iqbal*, 556 U.S. at 678

20  ("Where a complaint pleads facts that are merely consistent with a defendant's

21  liability, it stops short of the line between possibility and plausibility of entitlement

22  to relief."  Internal quotes omitted.)  Agape alleges that the statutes of limitations are

23  tolled by fraudulent concealment, equitable estoppel, delayed discovery and

24  equitable tolling, however, as discussed below, none of these theories apply.

25           1.      The FAC Fails to Plead Fraudulent Concealment With Specificity

26           The FAC alleges that Agape was unaware of Gridiron's relationship with

27  WSGA throughout the seven year period of Gridiron's purported embezzlement.

28  FAC, p. 4:1-2.  Further, the FAC alleges that WSGA was ignorant of what was

1  occurring in its own bank account throughout the relevant period.  *Id.* p. 4:15-23.

2  Therefore, not only does the FAC fail to allege fraud against WSGA with

3  specificity, but it establishes that WSGA could not have committed fraud.

4        Averments of fraud must be pled with specificity, and must include the "who,

5  what, when, where, and how" of the purported misconduct.  *Cooper*, 137 F.3d at

6  627 (internal quotations omitted); Fed. R. Civ. P. 9(b).  A plaintiff must plead with

7  particularity any fraudulent behavior on the part of the defendant that would excuse

8  his delay in bringing suit.  *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2003);

9  *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980); *Rutledge v.*

10  *Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).

11        Agape has failed to allege the "what"—in this case, the amount stolen—and

12  the "when"—in this case, the dates of each of WSGA's alleged misrepresentations

13  in connection with each alleged theft—necessary to establish fraudulent

14  concealment against WSGA.  Because Agape was admittedly ignorant of Gridiron's

15  position with WSGA, Agape cannot claim that Gridiron was representing WSGA

16  when he stole money during his employment with Agape.  Without the specificity

17  identifying when the thefts occurred and what amounts were stolen on each date, the

18  FAC fails to state a claim.

19        2.      The FAC Fails to Allege Acts by WSGA Justifying Equitable Estoppel

20        The doctrine of equitable estoppel operates to toll a statute of limitations

21  period when a defendant has acted to induce another into forbearing suit within the

22  applicable limitations period.  *Lantzy v. Centex Homes*, 31 Cal.4th 363, 383, 73 P.3d

23  517, 532 (Cal.Ct.App. 2003).  In order to invoke equitable estoppel at the pleading

24  stage, a plaintiff must allege facts demonstrating that: (1) the defendant represented

25  during the applicable limitations period that all damages would be remedied; (2)

26  plaintiff reasonably relied on the defendant's representations; (3) the representation

27  proved to be false after the limitations period expired; and (4) plaintiff proceeds

28  diligently once the truth is discovered.  *Id.* at 384, 73 P.3d at 533.

Epport, Richman & Robbins, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

Again, Agape's FAC must fail because Agape does not allege that either WSGA or Agape had any reason to communicate with each other, or that the two parties were even aware of each other's existence.  None of the elements are satisfied here, nor could they be, because the parties never contacted each other until after Agape discovered Gridiron's fraud.  The representations of Gridiron, who was working for Agape in his capacity as Agape's accountant and employee, cannot be imputed to WSGA under the facts alleged.  Moreover, Agape discovered the fraud in March of 2014, yet waited eight months to file its first complaint in the now-dismissed adversary proceeding.  See, Adversary Complaint, Request for Judicial Notice ("RJN") Ex. "A."  This is hardly demonstrative of diligence.  Therefore, equitable estoppel does not apply, and the FAC, as pled, fails to state a claim.

3.   The FAC Fails to Allege Agape's Reasonable Diligence in Discovering its Purported Claims to Justify Delayed Discovery

Under the so-called discovery rule, a plaintiff may toll the statute of limitations to limit accrual to the point in time when the plaintiff suspects or should have reason to suspect a factual basis for the action.  *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797, 250 P.3d 181, 191 (Cal.Ct.App. 2011).  A plaintiff must plead the time and manner of discovery, and that exercise of reasonable diligence would not have led to the discovery of the action.  *Nguyen v. Western Digital Corp.*, 229 Cal.App.4th 1522, 1553, 177 Cal.Rptr.3d 897, 924 (Cal.Ct.App. 2014).

Ironically, Agape accuses WSGA of unreasonable conduct for failing to discover Gridiron's wrongdoing by examining its own bank statements.  Had Agape examined its own bank statements, it could have easily discovered Gridiron's fraud.  WSGA did not prevent Agape from examining its own bank statements, and the complete lack of any relationship between WSGA and Agape demonstrates that such a showing is impossible.  Moreover, even when Agape did finally discover the fraud, it still waited eight months to bring suit against WSGA.  Therefore, Agape fails to demonstrate its diligent pursuit of its claims, and the FAC must fail.

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

4.    <u>The FAC Fails to Allege Any Facts Justifying Equitable Tolling</u>

Federal courts sitting in diversity over state court matters apply state substantive law with respect to equitable tolling. *Butler v. National Community Renaissance of California*, 766 F.3d 1191, 1204 (9th Cir. 2014). The doctrine of equitable tolling applies when a complainant who possesses several legal remedies diligently pursues one of those remedies in good faith. *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 100, 194 P.3d 1026, 1031 (Cal. 2008); *Addison v. State*, 21 Cal.3d 313, 317, 578 P.2d 941, 943 (Cal. 1978). "[I]t may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *McDonald*, at 100, 194 P.3d at 1032.

Agape fails to demonstrate that it exercised any such diligence as to its claims extending back to 2007. Agape further fails to allege that it pursued any sort of remedy or judicial activity that would have tolled the limitations period for a full seven years. The only equitable tolling that Agape alleges is that Agape brought the adversary proceeding. The adversary proceeding was filed on November 7, 2014. RJN, Ex. "A." However, Agape fails to allege that the funneling of any its funds through WSGA occurred within the two-to-three year statutory period prior to the filing of the adversary proceeding. Therefore, Agape has failed to state a claim.

**D.**    **<u>Agape's Third Cause of Action for Negligence is Barred Under the Economic Loss Rule</u>**

Negligence actions require the plaintiff to establish four elements: (1) that the defendant owed plaintiff a legal duty, (2) that the defendant breached that duty, (3) that the breach was a proximate or legal cause of the plaintiff's injury, and (4) damages. *Pamela W. v. Millson*, 25 Cal.App.4th 950, 956, 30 Cal.Rptr.2d 690, 693 (Cal.Ct.App. 1994). A prerequisite for the other three elements is a plaintiff's ability to establish that he was owed a legal duty of care. *Summit Financial*

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

1  *Holdings, Ltd. v. Continental Lawyers Title Company*, 27 Cal.4th 705, 715, 41 P.3d

2  548, 554 (Cal. 2002); *Butcher v. Gay*, 29 Cal.App.4th 388, 399-400, 34 Cal.Rptr.2d

3  771, 776-77 (Cal.Ct.App. 1994).

4       The FAC seeks to impose liability for negligence against WSGA for its

5  purported failure to prevent economic loss to Agape, despite the fact that WSGA has

6  no such duty as a matter of law.  It is well-recognized under California law that

7  "courts are reluctant to impose duties to prevent purely economic harm to third

8  parties."  *Lake Almanor Associates, L.P. v. Huffman Broadway Group, Inc.*, 178

9  Cal.App.4th 1194, 1205, 101 Cal.Rptr.3d 71, 80 (Cal.Ct.App. 2009).  "Recognition

10  of a duty to manage business affairs so as to prevent purely economic loss to third

11  parties in their financial transactions is the exception, not the rule, in negligence

12  law."  *Quelimane Co, Inc. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 58, 960

13  P.2d 513, 532 (Cal. 1998).

14       The injuries alleged in the FAC are purely economic.  Gridiron allegedly stole

15  millions of dollars from Agape, and used WSGA as a conduit for a portion of those

16  funds.  WSGA had no duty to shield Agape from economic losses, particularly

17  because WSGA was not in any position to "supervise, prohibit, control [or]

18  regulate" Gridiron in his capacity as the employee and accountant of Agape.  This

19  duty belonged to Agape, and Agape alone.

20       More importantly, it is difficult to countenance how Agape could establish

21  "but for" causation even if a duty existed.  The FAC alleges that, "WSGA knew or

22  should have known that its failure to supervise, prohibit, control and regulate the

23  conduct of its officer and Treasurer created a risk to others."  FAC, p. 7:8-9.

24  However, Gridiron was in a position to steal from Agape in the first place because

25  he was Agape's employee and accountant, and he was placed into that position by

26  Agape, not WSGA.  WSGA was in no position to tell Agape whom it could hire.

27  Further, Agape alleges that it lost an additional $3,040,000 due to thefts of Gridiron

28  that had nothing to do with WSGA.  FAC, p. 5:12-14.  Since Gridiron stole more

Epport, Richman & Robbins, llp
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

money from Agape using instrumentalities other than WSGA's bank account, Agape's allegation that WSGA had anything to do with thefts from Agape's own bank accounts by its own employee that occurred completely independently of WSGA's control is specious.

**E.**    **Agape's Fourth Cause of Action for Civil Theft/Conversion Fails Because It Does Not Involve a Specific, Identifiable Sum, and Because WSGA Was a Mere Conduit**

The FAC alleges that "approximately" and "more than" $1.9 million dollars were purportedly converted by WSGA.  FAC, pp. 1:26-2:1, 5:12-14.  The FAC further alleges that Gridiron was responsible for the "funneling of approximately $1.9 million of the stolen money through the WSGA[,]" that "WSGA utilized a portion of the funds received from AFWC to pay for its routine operating expenses when its cash flow from membership dues and its golf tournament was not sufficient to cover such expenses[,]" and that Gridiron later admitted in his bankruptcy schedules that he owned $4.8 million in "Gambling Winnings," which was "almost the exact amount that AFWC identified as funds stolen from it by Gridiron."  FAC, pp. 1:26-2:1, 5:14-20.

The elements of civil theft or conversion[3] require: (1) plaintiff's ownership or right to possession of property; (2) defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and (3) damage to plaintiff. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010); *Sanowicz v. Bacal*, 234 Cal.App.4th 1027, 1042, 184 Cal.Rptr.3d 517, 529 (Cal.Ct.App. 2015); *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal.App.4th 1105, 1135, 167 Cal.Rptr.3d 832, 857 (Cal.Ct.App. 2014).  Under Agape's theory, WSGA was a mere conduit of a general and unspecified amount of allegedly stolen funds.

─────────────────────

[3] For brevity's sake, when WSGA refers to conversion it also refers to civil theft.

EPPORT, RICHMAN & ROBBINS, LLP

1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1.     Agape Has Failed to Allege a Specific, Identifiable Sum of Money to Support Its Conversion Claim

As a preliminary matter, the FAC fails to state a claim for conversion of money because Agape fails to identify a specific, quantifiable sum at issue.  "Money cannot be the subject of a cause of action for conversion *unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment*."  *Sanowicz*, 234 Cal.App.4th at 1042, 184 Cal.Rptr.3d at 529 (emphasis in original; internal quotes omitted); *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1491, 49 Cal.Rptr.3d 227, 255 (Cal.Ct.App. 2006).  A generalized claim for money is not actionable conversion. *Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 235, 68 Cal.Rptr.2d 31, 34-35 (Cal.Ct.App. 1997).  Cases involving conversion of money "typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others."  *Kim v. Westmoore Partners, Inc.*, 201 Cal.App.4th 267, 284-85, 133 Cal.Rptr.3d 774, 789 (Cal.Ct.App. 2011).

Here, Agape alleges that over a period of seven years, Gridiron funneled an amount through WSGA that is "approximately" but also "greater than" $1.9 million.  This is not a specific, identifiable amount, and as discussed below, these funds were never actually held for the benefit of WSGA.  There was never any indication to WSGA or its depository institution that the funds that were "funneled through" WSGA's account were trust funds or otherwise the property of another party, and in any event, WSGA is not even alleged to have known this activity was occurring.  Additionally, Agape fails to allege what amount was "utilized" by WSGA.[4]  Money that is deposited in various amounts, over time, without any indication that it is

_____

[4] WSGA disputes that the term "utilized" reflects money that has been converted, as Plaintiff admits that Gridiron received all of the funds he stole from Plaintiff in Paragraph 25 of the FAC and Exhibit "A" to the FAC.

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA  90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   being held for the benefit of another is not properly subject to a conversion claim.

2   *See, Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th

3   472, 485, 56 Cal.Rptr.2d 756, 765 (Cal.Ct.App. 1996) (money wired into

4   partnership accounts over time, in various sums, without any indication that it was

5   held in trust deemed not subject to conversion claim).

6        2.    WSGA Was a Mere Conduit, and Therefore, Never Possessed or

7   Controlled Agape's Money

8       Agape alleges that WSGA's alleged conversion consisted of Gridiron

9   "funneling of approximately $1.9 million of the stolen money through the

10   WSGA[.]" FAC, p. 1:26-2:1. In this sense, WSGA has not exercised dominion or

11   control over the funds, but is rather a bailee who inadvertently acted as a mere

12   conduit of Agape's funds. A bailee who accepts stolen personal property and then

13   returns it to the bailor without knowledge of the theft cannot be held liable for

14   conversion. *Steele v. Marsicano*, 102 Cal. 666, 36 P. 920 (Cal. 1894); *Software*

15   *Design*, 49 Cal.App.4th at 485, 56 Cal.Rptr.2d at 765.

16       The case of *Simonian v. Patterson,* 27 Cal.App.4th 773, 32 Cal.Rptr.2d 722

17   (Cal.Ct.App. 1994) is instructive. In *Simonian*, a father moved several record

18   albums and Christmas decorations which he believed belonged to his daughter, but

19   which in fact belonged to his daughter's ex-boyfriend, from the ex-boyfriend's

20   apartment to his daughter's new apartment. In holding that the father's demurrer to

21   the ex-boyfriend's conversion claim was properly sustained, the Court reasoned that

22   the father did not exercise dominion over the property because he derived no

23   personal benefit from possessing it for a brief period. *Id.* at 773, 32 Cal.Rptr.2d at

24   726-27. The Court further directly applied the "mere conduit" theory articulated in

25   Justice Benjamin Cardozo's opinion in *Carson v. Federal Reserve Bank of New*

26   *York*, 254 N.Y. 218, 172 N.E. 475 (N.Y. 1930), which held that,

27

28

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

> The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed.
>
> *Simonian* at 781, 32 Cal.Rptr.2d at 726-27, quoting *Carson,* 254 N.Y. at 236, 172 N.E. at 482.

The *Simonian* Court analogized the bankruptcy preference principles of the *Carson* holding to conversion, noting that a party who had not derived any personal gain from a property transfer could not be held liable for conversion.  *Simonian*, at 781, 32 Cal.Rptr.2d at 726-27.

The FAC alleges that WSGA was a mere conduit of the funds deposited into its account by Gridiron.  The FAC alleges that the funds were "funnel[ed] through" WSGA's bank account.  The FAC also alleges that Gridiron admitted to owning more thab $4.8 million in "Gambling Winnings," which constitutes Agape's own admission that Gridiron was the beneficial possessor of all of the funds stolen from Agape.  However, unlike all of the cases at bar, WSGA not only lacked beneficial possession, but it lacked knowledge of its possession at all times.  As the entity merely temporarily—and unknowingly—holding funds as Gridiron funneled them through its bank account, WSGA cannot be liable for conversion.

## F. <u>Agape's Fifth Cause of Action for Money Had and Received Fails Because WSGA Did Not Benefit From or Know About Gridiron's Acts</u>

Under California law, the elements of a claim for money had and received are that (1) one person has received money which belongs to another, and (2) equity and good conscience require the recipient to repay the funds.  *Avidor v. Sutter's Place, Inc.*, 212 Cal.App.4th 1439, 1454, 151 Cal.Rptr.3d 804, 816 (Cal.Ct.App. 2013); *Gutierrez v. Girardi*, 194 Cal.App.4th 925, 937, 125 Cal.Rptr.3d 210, 219

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   (Cal.Ct.App. 2011).  A claim for money had and received is quasi-contractual action

2   on an implied contract.  *Warren* 343 F.2d at 360.

3       1.      WSGA Did Not Receive the Benefit of the Funds

4       Agape's common counts for money had and received and unjust enrichment

5   similarly fail because, as a matter of both fact and law, WSGA did not ever receive

6   the benefit of any of the funds illegally deposited into, and later taken out of, its

7   account.  A party who did not actually receive the use or benefit of the funds in

8   question is not held to have received such funds.  *Whittier v. Home Sav. Bank of Los*

9   *Angeles*, 161 Cal. 311, 319, 119 P. 92, 96 (Cal. 1911); *see also, Avidor v. Sutter's*

10  *Place, Inc.*, 212 Cal.App.4th 1439, 1454, 151 Cal.Rptr.3d 804, 816 (Cal.Ct.App.

11  2013) (funds must be received as element of common counts); *Gutierrez*, 194

12  Cal.App.4th at 937, 125 Cal.Rptr.3d at 219 (Cal.Ct.App. 2011) (same).

13      2.      Even If WSGA Allegedly Received a Benefit, the Allegations in the

14  FAC Demonstrate That Its Retention of the Benefit Would Not Be Unjust

15      The California Supreme Court has held that retention of a benefit alone is not

16  enough to sustain a claim for money had and received:

17          "Even when a person has received a benefit from
            another, he is required to make restitution 'only if the
18          circumstances of its receipt or retention are such that, as
            between the two persons, it is unjust for him to retain it.'
19          [¶]  Thus, a party who does not know about another's
            mistake, and has no reason to suspect it, may not be
20          required to give up the benefit if he or she also relied on
            it to his or her detriment."
21
22
23          *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51, 924 P.2d 996,
            1003 (Cal. 1996), quoting Rest., Restitution, § 1, p. 13.
24

25

26      This principle has been articulated to mean the following: "In other words,

27  innocent recipients may be treated differently than those persons who acquire a

28  benefit with knowledge."  *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657,

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

1664, 15 Cal.Rptr.2d 173, 177 (Cal.Ct.App. 1992). "Stated plainly, if it's your mistake, you get to pay for it—unless the recipient misled you or accepted the payment knowing you didn't owe it." *City of Hope Nat. Medical Center v. Superior Court*, 8 Cal.App.4th 633, 637, 10 Cal.Rptr.2d 465, 467 (Cal.Ct.App. 1992).

The allegations in the FAC demonstrate that WSGA did not know or have reason to know that anything irregular was occurring with its bank account. *See,* FAC, p. 4:15-23. WSGA did not see any of its bank activity, and had no reason to, having delegated that responsibility to its treasurer. The FAC specifically alleges that Agape's funds were "funnel[ed]…through" WSGA's bank account, and that Gridiron claimed title to the entire amount stolen for himself. FAC, pp. 1:26-2:1, 5:18-20. Any funds purportedly "utilized" by WSGA "to pay for its routine operating expenses" were paid because WSGA had no knowledge that ill-gotten funds—as opposed to membership dues and golf tournament revenues which are also normally the responsibility of a corporate treasurer to track—were there to "utilize" at all. *See*, *id.* at p. 5:15-17. WSGA allegedly changed positions in detrimental reliance by paying for these expenses. Therefore, even if WSGA was benefited, its detrimental reliance would allow it to retain any purported benefit.[5]

3. <u>Agape's Money Had and Received Claim is Barred Because of Agape's Failure to do Equity</u>

Agape admits that it did not supervise, prohibit, control or regulate Gridiron's activities as his employer with respect to Agape's own bank account. FAC, p. 3:22-28. Because Agape's money had and received claim against WSGA is premised on WSGA's purported failure to exercise proper controls over Gridiron with respect to WSGA's bank account, the claim must fail under the doctrine of failure to do equity.

---

[5] WSGA strongly disputes that it was benefited in any way by the activities of Gridiron, who stole a significant portion of WSGA's own money, as shown in the plea agreement incorporated to the FAC by reference. *See,* FAC, Ex. "A."

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

1   Affirmative defenses such as failure to do equity may be properly considered on a

2   motion to dismiss where the allegations in the complaint suffice to establish the

3   defense.  *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Sams v. Yahoo! Inc.*, 713 F.3d

4   1175, 1179 (9th Cir. 2013).

5   While an action for money had and received is one at law, it is governed by

6   principles of equity.  *Mains v. City Title Ins. Co.*, 34 Cal.2d 580, 586, 212 P.2d 873,

7   876 (Cal. 1949); *Avidor, supra,* 212 Cal.App.4th at 1454.  It is a well recognized

8   maxim that "he who seeks equity must do equity in the transaction in respect to

9   which relief is sought[.]"  *McQuiddy v. Ware*, 87 U.S. 14, 19 (1873); *In re

10   Gardenhire*, 209 F.3d 1145, 1152 fn. 11 (9th Cir. 2000).  "The plaintiff need not

11   have acted inequitably for the maxim to be given effect, as long as equitable rights

12   favoring the defendant arise from the same matter in controversy."  *Dickson,

13   Carlson & Campillo v. Pole*, 83 Cal.App.4th 436, 446, 99 Cal.Rptr.2d 678, 685

14   (Cal.Ct.App. 2000).

15   The nature of Agape's "misconduct" is precisely the same as that which it

16   alleges against WSGA.  The FAC admits that Gridiron took over the financial duties

17   that had previously been charged to Agape's chief financial officer when the chief

18   financial officer resigned.  FAC, p. 3:16-18.  Agape admits that Gridiron took

19   control over Agape's bank statements and checks.  Agape was in the same position

20   to demand inspection of its bank account records as WSGA, yet it chose to delegate

21   that duty to Gridiron, as did WSGA.  Agape cannot, in good conscience, attempt to

22   recover a windfall against a party that fell victim to the same confidence scam, and

23   ultimately did not benefit from the theft.

24   **G.    Agape's Sixth Cause of Action Fails Because Unjust Enrichment is Not**

25   **an Independent Claim**

26   There is no independent cause of action in California for unjust enrichment.

27   *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Levine v.

28   Blue Shield of California*, 189 Cal.App.4th 1117, 1138, 117 Cal.Rptr.3d 262, 278-79

1  (Cal.Ct.App. 2010); *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370, 108

2  Cal.Rptr.3d 682, 670 (Cal.Ct.App. 2010); *Jogani v. Superior Court*, 165

3  Cal.App.4th 901, 911, 81 Cal.Rptr.3d 503, 511 (Cal.Ct.App. 2008); *McKell v.*

4  *Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1490, 49 Cal.Rptr.3d 227, 255

5  (Cal.Ct.App. 2006); *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779,

6  794, 131 Cal.Rptr.2d 347, 357 (Cal.Ct.App. 2003); *Lauriedale Associates, Ltd. v.*

7  *Wilson*, 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774, 780 (Cal.Ct.App. 1992)  "The

8  phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the

9  result of a failure to make restitution under circumstances where it is equitable to do

10  so." *Lauriedale* at 1448, 9 Cal.Rptr.2d at 780.

11       Agape's unjust enrichment claim is simply a redundant statement of its

12  money had and received claim, which is also a quasi-contractual common count for

13  restitution.  *See, Astiana*, 783 F.3d at 762 (treating unjust enrichment claim as quasi-

14  contractual common count claim for restitution).  Therefore, this claim is treated in

15  the same fashion as Agape's duplicative money had and received claim, tracks with

16  the same elements as a common count and fails for the same reasons.

17  **H.**  **Agape's Seventh Cause of Action for Receipt of Stolen Property Fails**

18        **Because Agape Admits That WSGA Did Not Possess Actual Knowledge**

19       The FAC alleges that Gridiron acted alone, and without the knowledge of

20  anyone else at WSGA:

21          Gridiron had exclusive access and control of the
        WSGA's bank accounts and bank statements and

22          conducted all banking activities on behalf of the WSGA.

23          Upon information and belief, no WSGA representative,
        other than Gridiron, ever reviewed the bank statements of

24          the WSGA during the relevant time period.

25

26          FAC, p. 4:15-18.

27       California Penal Code section 496(a) states in pertinent part:

28

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, <u>knowing the property to be so stolen</u> or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, <u>knowing the property to be so stolen or obtained</u>, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

Emphasis added.

Subsection (c) of California Penal Code section 496 states provides a civil remedy for persons injured by the knowing theft of their property. *Id.* The knowledge component of the statute is essential, and possession of stolen property alone is insufficient to support the imposition of liability under Penal Code section 496. *People v. Tessman*, 223 Cal.App.4th 1293, 1302, 168 Cal.Rptr.3d 29, 35 (Cal.Ct.App. 2014); *People v. Stuart*, 272 Cal.App.2d 653, 654, 77 Cal.Rptr. 531, 532 (Cal.Ct.App. 1969). Because the FAC explicitly avers that WSGA did not possess knowledge of Gridiron's wrongdoing with WSGA's bank account, this claim must fail.

The FAC is not premised upon WSGA's actual knowledge, but rather, its lack of knowledge. Essentially, the FAC seeks to establish liability for theft on the basis that WSGA did have anyone other than Gridiron view its bank statements. *See,* FAC, p. 4:15-18. However, this only establishes the absence of the necessary elements of Agape's claims. The FAC even admits that, "[p]rior to being removed as WSGA's Treasurer, Gridiron's actions with respect to the WSGA's bank accounts were typical of or broadly incidental to the actions of a Treasurer of a non-profit corporation." FAC, p. 4:21-23. This admission comes on the heels of the FAC's admission that Agape's money was all stolen by Gridiron prior to his "funneling of approximately $1.9 million of the stolen money through the WSGA[.]" FAC, p. 1:27-28. In other words, not only did WSGA not have any

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885 • FACSIMILE (310) 785-0787

actual knowledge that Gridiron was committing illegal acts, but it also had no reason to know that these acts were being committed, since Gridiron was "funneling money through WSGA" and his actions were "typical" of those of a corporate treasurer of any legitimate non-profit corporation.  The FAC's affirmative pleading of WSGA's lack of knowledge is fatal to Agape's receipt of stolen property claim, and therefore, this claim should be dismissed with prejudice.

**V.**

**<u>CONCLUSION</u>**

Agape's FAC against WSGA is a complete substantive and procedural failure.  It contains incurable defects, and fails to offer any justification as to why WSGA should suffer at all—let alone for an extended, seven-year period—because it was also victimized by Gridiron.  Further, Agape cannot make a good faith offer of proof to amend its FAC, because it has already been provided with WSGA's financial records, which conclusively show that WSGA was also a victim of Gridiron.  Because Agape has failed to state a single, cognizable claim, the FAC should be dismissed with prejudice as against WSGA.

DATED: October 9, 2015            EPPORT, RICHMAN & ROBBINS, LLP

                                  By: _____/s/_____

                                      CHRISTOPHER R. NELSON
                                  Attorneys for WESTERN STATES GOLF
                                  ASSOCIATION

EPPORT, RICHMAN & ROBBINS, LLP
1875 CENTURY PARK EAST, SUITE 800
LOS ANGELES, CALIFORNIA 90067-2512
TELEPHONE (310) 785-0885  •  FACSIMILE (310) 785-0787