MARK ROBBINS, State Bar No. 137159
 mrobbins@erlaw.com
CHRISTOPHER R. NELSON, State Bar No. 242859
 cnelson@erlaw.com
**EPPORT, RICHMAN & ROBBINS, LLP**
1875 Century Park East, Suite 800
Los Angeles, California  90067-2512
Telephone:  (310) 785-0885
Facsimile:  (310) 785-0787

Attorneys for WESTERN STATES GOLF ASSOCIATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AGAPE FAMILY WORSHIP CENTER, INC., a New Jersey non-profit corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>DONALD RICHARD GRIDIRON, JR., and WESTERN STATES GOLF ASSOCIATION, a California non-profit corporation,<br><br>  Defendants. | CASE NO. 5:15-cv-01465-MMM-SP<br><br>**DEFENDANT WESTERN STATES GOLF ASSOCIATION'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f)**<br><br>Date:  February 1, 2016<br>Time:  10:00 a.m.<br>Crtrm.: 780<br>Place:  255 East Temple Street, Los Angeles, California 90012<br><br>[Filed Concurrently with Memorandum of Points and Authorities; Request for Judicial Notice; Proposed Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on February 1, 2016, at 10:00 a.m. or as soon thereafter as this matter may be heard, in Department 780 of the above-entitled Court, located at 255 Temple Street, Los Angeles, California 90012, Defendant

Western States Golf Association ("WSGA") will move this Court for an Order striking portions of Plaintiff's First Amended Complaint ("FAC"), namely Paragraphs 43, 47, 51, as well as all references to punitive and exemplary damages in the Prayer for Relief on page 10, lines 8 ("punitive damages according to proof at trial against Gridiron and WSGA"), 9-10 ("punitive damages according to proof at trial against Gridiron and WSGA"), and 12 ("punitive damages according to proof at trial against Gridiron and WSGA"), on the grounds that they constitute the kind of "immaterial, impertinent, or scandalous" material that should be stricken pursuant to Federal Rule of Civil Procedure 12(f).  In particular, this Motion is made upon the grounds that the FAC alleges that WSGA lacked knowledge of the activities of Defendant Donald Richard Gridiron with respect to WSGA's bank account, but then seeks an improper award of punitive damages.

    This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 23, 2015.

    This Motion will be based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Request for Judicial Notice filed herewith; the pleadings and records relating to this action; and such other and further written and oral evidence as may be presented in connection with the hearing on this Motion.

    If you wish to oppose this Motion, you must file a written opposition with the above-entitled Court no later than January 11, 2016.

DATED: October 9, 2015        EPPORT, RICHMAN & ROBBINS, LLP

By:      /s/     
    CHRISTOPHER R. NELSON
Attorneys for WESTERN STATES GOLF ASSOCIATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The First Amended Complaint ("FAC") of Plaintiff Agape Family Worship Center, Inc. ("Agape" or "Plaintiff") alleges that its accountant and employee, Defendant Donald Richard Gridiron, Jr. ("Gridiron"), stole almost $5 million from Agape over a seven-year period beginning in 2007. FAC, p. 1:26-27. As part of his pattern of theft, Gridiron is alleged to have engaged in the "funneling of approximately $1.9 million of the stolen money through" the bank account of Defendant Western States Golf Association ("WSGA"), a non-profit corporation for which Gridiron acted as treasurer during the relevant time period. *Id.* at pp. 1:26-2:1.

Agape alleges that Gridiron's acts of theft occurred because its own bookkeeper did not review or even open Agape's mailed bank statements at the instruction of Gridiron, even though Agape received these statements in its office in New Jersey. *Id.* at p. 3:22-24. As to WSGA's purported role in the theft, Agape alleges that Gridiron maintained exclusive control over WSGA's bank accounts and bank statements, and that no WSGA member except for Gridiron reviewed WSGA's bank statements during the relevant time period. *Id.* at p. 4:15-18.

Despite the fact that WSGA is alleged to be "guilty" of the same ignorance of Gridiron's thefts as Agape, the FAC conclusorily states that the "acts and omissions" of WSGA constituted fraud, oppression and malice under California Civil Code section 3294, and are subject to punitive damages. These allegations are immaterial and impertinent conclusions, and therefore, they should be stricken from the FAC with prejudice.

## II.
## THE LEGAL STANDARD FOR A MOTION TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)

A motion to strike is proper to eliminate "any redundant, immaterial, impertinent, or scandalous matter" in a pleading. Fed R. Civ. Proc. 12(f). A motion to strike is proper where such allegations would unnecessarily complicate the relevant issues through "extensive evidence" of unrelated matters, needlessly lengthening the trial. *See*, *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) (quotations and citations omitted), *rev'd on other grounds*, 510 U.S. 517 (1994). Thus, motions to strike are proper where doing so would streamline the ultimate resolution of the action and focus the attention of the Court, and later the jury, on the real issues of the case, as opposed to at best superfluous, and at worst prejudicial, allegations. *See*, *Fogerty*, 984 F.2d at 1527; *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (noting the purpose of a "motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial"); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1039 (E.D. Cal. 2009) (finding motions to strike are proper where the "allegations in the pleading has no possible relation to the controversy, and may cause prejudice to one of the parties[]").

Courts have clearly defined allegations that may be stricken. Impertinent matters are "irrelevant to the issues in this case and or are otherwise inadmissible." *Fogerty*, 984 F.2d at 1527. They are impertinent because they are neither "responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). Immaterial allegations contain "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fogerty*, 984 F.2d at 1527; *Wilkerson*, 229 F.R.D. at 170 (striking allegation that doctor acted "unprofessionally" where that allegation was not material to a claim for

relief premised on willful medical omissions). Scandalous allegations are those that bear "no possible relation to the controversy or may cause the objecting party prejudice." *Wilkerson*, 229 F.R.D. at 170. Redundant matter consists of allegations that constitute needless repetition of other averments or which are foreign to the issue being decided. *Wilkerson*, 229 F.R.D. at 170 (citing *Gilbert v. Eli Lilly Co., Inc.*, 56 FRD 116, 120, fn. 4 (D.P.R. 1972)).

Even where material may be argued as relevant despite these infirmities, courts have properly granted motions to strike where the allegations create "serious risks of prejudice" or "delay and confusion" of the issues. *Fogerty*, 984 F.2d at 1528; *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

As set forth below, Agape has alleged a variety of impertinent, immaterial and scandalous materials which are prejudicial to WSGA and a wasteful expenditure of the Court's time and resources. As such, these allegations should be stricken from the FAC.

## III.

## DISCUSSION

### A. Quasi-Contract Claims Are Not Properly Subject to Punitive Damages

As discussed in WSGA's Motion to Dismiss, there is no independent cause of action for unjust enrichment in California. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). In any event, Agape's unjust enrichment claim is a quasi-contractual common count. *See, Astiana*, 783 F.3d at 762 (treating unjust enrichment claim as quasi-contractual common count claim for restitution). Like other common counts, Agape's claim for money had and received is quasi-contractual action on an implied contract. *Warren v. Lawler,* 343 F.2d 351, 360 (9th Cir. 1965). Actions for breach of contract do not generally afford punitive or exemplary damages. Cal. Civ. Code § 3924(a); *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F.2d 385, 399 (9th Cir. 1983); *PSG Co. v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 663. (9th Cir. 1969). California courts have held that punitive damages are not available for unjust enrichment claims. *See*, *Steiner v. Rowley*, 35 Cal.2d 713, 720, 221 P.2d 9, 13 (Cal. 1950) (plaintiff who had received attachment on money had and received claim had elected remedy and could not pursue punitive damages under inconsistent alternate remedy); *Roam v. Koop*, 41 Cal.App.3d 1035, 1040, 116 Cal.Rptr. 539, 543 (Cal.Ct.App. 1974) (same).

Agape is prohibited from seeking punitive damages in association with its quasi-contractual claims of money had and received and unjust enrichment as a matter of law. These allegations do not belong in any discussion of quasi-contractual liability, under any circumstances. They could only serve to distract any factfinder from the facts at issue, prejudice WSGA, and waste judicial resources. Therefore, the allegations in Paragraphs 47 and 51, as well as those requests in on Page 10, lines 9-10 and 12, are impertinent, irrelevant and scandalous, and should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

**B.    WSGA's Lack of Knowledge Renders the Punitive Damage Allegations Under the FAC's Conversion Claim Impertinent, Irrelevant and Scandalous**

A plaintiff seeking punitive damages under California law must specifically allege the facts allowing such recovery. Under California law, a mere "conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294." *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200, 205 (Cal.Ct.App. 1977). "Not only must there be circumstances of oppression, fraud or malice, but facts must be alleged in the pleading to support such a claim." *Grieves v. Superior Court*, 157 Cal.App.3d 159, 164, 203 Cal.Rptr. 556, 561 (Cal.Ct.App. 1984). "Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature."

*Rhodes v. Sutter Health*, 940 F.Supp.2d 1258, 1269 (E.D.Cal. 2013), quoting *College Hospital Inc. v. Superior Court*, 8 Cal.4th 704, 726, 882 P.2d 894, 907 (1994).

The FAC's allegations of fraud, malice and oppression with respect to the conversion claim are contradicted by the facts alleged by Agape. Agape alleges that WSGA had no knowledge of what was occurring with respect to its bank account the entire time, and that it had instead delegated this duty to its duly-elected corporate treasurer. These allegations of ignorance are entirely inconsistent with the kind of willful behavior that is generally punished with punitive damages under California law. The allegations in Paragraph 43, as well as those on Page 10, line 8, only serve distract any factfinder from the facts at issue, prejudice WSGA, and waste judicial resources. Therefore, these allegations should be stricken.

## C. Gridiron's Knowledge of Alleged Conversion Cannot Be Imputed to WSGA Under Theories of Vicarious Liability

As discussed in WSGA's Motion to Dismiss, Agape's theories in the FAC are primarily founded upon the notion that WSGA is charged with awareness of Gridiron's acts by virtue of his position as treasurer of WSGA. The FAC's own allegations demonstrate that this contention is false.

### 1. Agape Cannot Impute Gridiron's Knowing Acts to WSGA Under the Adverse Interest Exception to the Corporate Imputation Rule

Agape erroneously maintains that, by virtue of Gridiron's position as an officer of WSGA, his knowledge of his own criminal conduct harming WSGA is imputed to WSGA. A corporate officer's knowledge of his own fraudulent acts against the corporation is not imputed to the corporation under the "adverse interest" exception to the imputation rule. *S. E. C. v. Seaboard Corp.*, 677 F.2d 1301, 1310 (9th Cir. 1982); *Oregon & C.R. Co. v. Grubissich*, 206 F. 577, 581 (9th Cir. 1917); *Cement & Concrete Workers District Council Pension Fund v. Hewlett Packard Company*, 964 F.Supp.2d 1128, (N.D.Cal. 2013); *see also, Funk v. Tifft*, 515 F.2d

23, 26 (9th Cir. 1975) (adverse interest exception applicable in cases of director theft and fraud against the corporation).  Further, a corporate officer or director's knowledge of activity in which he has a self-interest, irrespective of whether that interest is adverse to the corporation, is also not imputed to the corporation. *Commercial Lumber Co. v. Ukiah Lumber Mills*, 94 Cal.App.2d 215, 220-21 (Cal.Ct.App. 1949); *Abbott v. Limited Mut. Compensation Ins. Co.*, 30 Cal.App.2d 157, 163 (Cal.Ct.App. 1938).

Further, since Agape admits that it willingly ceded all financial control of its organization to Gridiron, all information regarding the status of Agape's accounts would necessarily be within the ambit of Gridiron's knowledge as an agent of Agape.  Just as with corporate officers, under California corporate and agency law, the knowledge of any agent acting within the scope of his duties is imputed to the corporation. *Fromberg v. Department of Alcoholic Beverage Control of Cal.*, 169 Cal.App.2d 230, 233, 337 P.2d 123, 125 (Cal.Ct.App. 1959); *Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, 168 Cal.App.2d 191, 204-05, 335 P.2d 995, 1004 (Cal.Ct.App. 1959).  In other words, imputed knowledge under principles of agency is a two-way street, and Agape cannot maintain its ignorance while insisting that WSGA be held to a higher standard.

2. <u>Agape Cannot Impute Gridiron's Knowing Acts to WSGA Under the Doctrine of *Respondeat Superior*</u>

The doctrine of *respondeat superior* imposes vicarious liability upon an employer for the torts committed by its employees in the scope of their employment. *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296, 907 P.2d 358, 360 (Cal. 1995).  This doctrine has been codified in California under principles of agency law under California Civil Code section 2338 and 2339.  However, while a willful, malicious and even criminal act may fall within the scope of employment for purposes of *respondeat superior*, the employer is not liable for an intentional tort that did not have a causal nexus to the employee's work. *Lisa M.*, at 297-87, 907

P.2d at 361.  Where an employee inflicts injury out of personal malice not engendered by his employment, the employer cannot held liable as a matter of law. *Lisa M.,* at 298, 907 P.2d at 361; *Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652, 656 171 P.2d 5, 8 (Cal. 1946).  An employee who abuses job-created authority to the detriment of others for purely personal reasons is not acting within the scope of his employment, and his actions are not "broadly incidental to the enterprise" undertaken by the employer.  *Perry v. County of Fresno*, 215 Cal.App.4th 94, 101-02, 155 Cal.Rptr.3d 219, 224 (Cal.Ct.App. 2005).

The case of *Insurance Company of North America v. Federal Express*, 189 F.3d 914, 922 (9th Cir. 1999), is instructive.  In *Federal Express*, a Federal Express employee stole a shipment of computer memory modules worth over $400,000.00 during the international shipping process.  In addressing the question of whether the doctrine of *respondeat superior* doctrine would impute vicarious liability for the theft to Federal Express, the Ninth Circuit held, "[w]e conclude that the California case law provides the answer with a resounding no." *Id.* at 922.  The Court reasoned that acts done solely for one's personal benefit are rarely engendered by the employer in a manner that would give rise to vicarious liability are less likely to serve the employer in some way.  *Id.*  The Court determined that the employee's theft did not serve Federal Express in any way, and noted that the theft only harmed Federal Express by exposing it to potential loss of business, damage to its reputation, legal fees, and other harms associated with employee theft.  *Id.*  The Court further noted that the fact that Federal Express' employment brought the thief and the victim together is not enough to trigger *respondeat superior* liability, noting that the theft represented a "substantial deviation" from the duties of the employee that benefited only the employee, and not Federal Express.  *Id.* at 922-23.

Just as in *Federal Express*, it is difficult to imagine how thefts like those perpetrated by Gridiron could ever be consistent with, or incident to, a corporate treasurer's duties.  Gridiron's thefts occurred without WSGA having any reason to

know that they were occurring. FAC, p. 4:15-23. It is certainly not "typical of or broadly incidental to the actions of a Treasurer of a non-profit corporation" to steal money from other organizations. *Contra,* FAC, p. 4:21-23.[1] Such behavior can never be engendered by any legitimate organization.

Moreover, under the facts alleged, Gridiron was not operating as an officer of WSGA when he stole from Agape. Indeed, the FAC alleges ignorance of WSGA's existence during the relevant times: "Unbeknownst to AFWC, Gridiron was an active member and officer of the WSGA." FAC, p. 4:1-2. If there was any employer-employee relationship providing a causal nexus to the alleged thefts, it was between Agape and Gridiron. Gridiron's position within WSGA did not allow him to access Agape's funds. Rather, when Gridiron stole from Agape, he did so by abusing his employment with Agape. Indeed, most of the theft alleged by Agape occurred completely independently of WSGA's purported involvement: Gridiron stole nearly $3 million from Agape in excess of what he funneled through WSGA, using instrumentalities completely outside of WSGA. Gridiron's unauthorized use of WSGA's bank account simply does not rise to the level of the engenderment of Gridiron's illegal activities.

## IV.
## CONCLUSION

Agape seeks punitive and exemplary damages without any justification for them. It would be entirely inappropriate for these allegations to be allowed to continue, and therefore, the Court should strike Paragraphs 43, 47, 51 of the FAC, as well as all references to punitive and exemplary damages in the Prayer for Relief on

---

[1] Because this allegation is a conclusion unsupported by any facts (and indeed, is contradicted by the other allegations in the pleading), it does not satisfy the pleading requirements under Federal Rule of Civil Procedure 8(a)(2). *See, Iqbal,* 556 U.S. at 678-79 (federal courts not bound to accept conclusions couched as facts).

page 10, lines 8 ("punitive damages according to proof at trial against Gridiron and WSGA"), 9-10 ("punitive damages according to proof at trial against Gridiron and WSGA"), and 12 ("punitive damages according to proof at trial against Gridiron and WSGA").

DATED: October 9, 2015         EPPORT, RICHMAN & ROBBINS, LLP

By: _____/s/_____
CHRISTOPHER R. NELSON
Attorneys for WESTERN STATES GOLF ASSOCIATION