O

# United States District Court
# Central District of California

| | |
|---|---|
| AGAPE FAMILY WORSHIP CENTER, INC., | Case No. 5:15-cv-1465-ODW-SPx |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WESTERN STATES GOLF ASSOCIATION'S MOTION TO DISMISS [12] AND GRANTING ITS MOTION TO STRIKE [13]** |
| DONALD RICHARD GRIDIRON, JR., and WESTERN STATES GOLF ASSOCIATION, | |
| Defendants. | |

## I.    INTRODUCTION

Pending before the Court is Defendant Western States Golf Association's ("WSGA") Motion to Dismiss and Motion to Strike Portions of the First Amended Complaint ("FAC").  (ECF Nos. 12, 13.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss and **GRANTS** the Motion to Strike, upon converting it into a motion to dismiss.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Plaintiff Agape Family Worship Center ("Agape") filed suit against Donald Richard Gridiron, Jr. ("Gridiron") and WSGA on July 22, 2015.   (ECF No. 1.)  Agape's claims arise from the theft of almost $5 million from Agape by its accountant Gridiron, over a period ranging from 2007 through early 2014.  (*Id.*)  The First Amended Complaint ("FAC") was filed on September 11, 2015, attaching Gridiron's plea agreement in his criminal case.  (ECF No. 11.)

In the FAC, Agape alleges that, during the relevant time period, Gridiron was also WSGA's accountant and treasurer, and conducted all banking activities on behalf of WSGA.  (*Id.* ¶¶17, 18, 20.)  In that capacity, Gridiron "funneled" approximately $1.9 million of Agape's stolen money through WSGA.  (*Id.* ¶¶ 1, 24.)  According to Agape, WSGA utilized a portion of the funds received from Agape to pay for its routine operating expenses when its cash flow was insufficient to cover such expenses.  (*Id.* ¶ 24.)

Based on these allegations, Agape has asserted claims for breach of fiduciary duty and fraud against Gridiron, and a claim for negligence against WSGA.  (*Id.* ¶¶ 26-39.)  Against both Gridiron and WSGA, Agape has asserted claims for conversion, money had and received, unjust enrichment, and receipt of stolen property.  (*Id.* ¶¶ 40-55.)

WSGA moved to dismiss and to strike portions of the FAC on October 9, 2015.[2]  (ECF Nos. 12, 13.)  Timely oppositions and replies were filed.  (ECF Nos. 20, 21, 24, 25.)  The motions are now before the Court for decision.

---

[2] WSGA requests that the Court take judicial notice of the complaint in the adversary bankruptcy proceeding, Case No. 2:14-ap-01709-NB; *Agape Family Worship Center, Inc. v. Donald Richard Gridiron, Jr., et al.*, filed in the United States Bankruptcy Court for the Central District of California. (ECF No. 14.)  The Court takes judicial notice of the complaint.  Fed. R. Evid. 201; *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Essentially, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination as to whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Generally, a court should freely give leave to amend a complaint after granting a dismissal. Fed. R. Civ. P. 15(a). However, a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### IV.   DISCUSSION

WSGA moves to dismiss all of Agape's claims against it, namely (1) vicarious liability, (2) negligence, (3) conversion, (4) money had and received, (5) unjust

enrichment, and (6) receipt of stolen property.  WSGA also moves to strike the portions in the FAC that reference punitive damages against WSGA.

### 1. Vicarious Liability

WSGA argues that it cannot be held vicariously liable for Gridiron's wrongdoings.  (Motion ["Mot."] 16-20.)  Under the doctrine of *respondeat superior*, an employer is liable for the torts of its employees committed within the scope of the employment.  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (1995).  "[A]n employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts."  *Id.* at 296-97.  To be within the scope of employment, the employee's tort must have a "causal nexus" to the employee's work.  *Id.* at 297.  For a "causal nexus" to exist, the tort must be "engendered by or arise from the work."  *Id*. at 298.  To constitute such an "outgrowth" of employment, "the risk of tortious injury must be inherent in the working environment or typical of or broadly incidental to the enterprise [the employer] has undertaken."  *Id.* (internal citations and quotation marks omitted).

The scope of employment is limited, however, by an element of foreseeability: an employer is liable only when, considering the enterprise's operations, the risk of injury is generally foreseeable.  *Id.* at 299.  Foreseeability "merely means that in the context of the particular enterprise, an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."  *Id.* (citing *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618-19, (1975)).  In other words, an employer will not be held vicariously liable for an employee's malicious or tortious conduct "if the employee *substantially* deviates from the employment duties for personal purposes."  *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1004-05 (1995) (emphasis in original).

The Court finds that Agape has sufficiently pleaded WSGA's vicarious liability

4

for the claims against Gridiron.  Agape alleges that Gridiron, as WSGA's treasurer and accountant, conducted all banking activities on behalf of WSGA, deposited unauthorized checks from Agape to WSGA's bank account, and used those funds to pay for WSGA's routine operating expenses.  (FAC ¶¶ 18, 20, 23, 24.)  It is "typical of or broadly incidental" to the duties of a treasurer and accountant to engage in banking activities on behalf of his employer and to pay for its routine operating expenses.  *See PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 150 Cal. App. 4th 384, 393-94 (2007) (law firm can be held vicariously liable for partner's participation in removing cash from client's residence to help client post bail and cover legal fees, because those activities are "typical of or broadly incidental" to the practice of a white-collar defense lawyer).  Moreover, an accountant and treasurer's theft of a third party to cover the employer's routine operating expenses, is foreseeable in that the conduct is "not so unusual or startling" and does not deviate substantially from his duties.  *Id.* at 393 (triable issues of fact remain as to whether lawyer's removal of cash from client's residence was a foreseeable consequence of the legal fees generated by the law firm); *see also Inter Mountain Mortg., Inc. v. Sulimen*, 78 Cal. App. 4th 1434, 1442 (2000) (loan representative's submission of fraudulent loan application to lender was foreseeable).  Thus, the Court **DENIES** the motion to dismiss as it pertains to WSGA's vicarious liability.[3]

### 2. Negligence

Agape alleges that it was injured by WSGA's "negligence in supervising, prohibiting, controlling and regulating the conduct of Gridiron . . . ."  (FAC ¶ 38.)  WSGA seeks to dismiss what is essentially a negligent supervision claim on the basis that it is barred by the economic loss rule.  (Mot. 25-27.)  According to WSGA, the

---

[3] WSGA additionally contends that the "adverse interest exception" applies to cut off its vicarious liability.  (Mot. 17.)  The Court will not consider this argument given that the applicability of this exception is a question of fact that is inappropriate for resolution at the pleading stage.  *See Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1144 (N.D. Cal. 2013).

economic loss rule prohibits a plaintiff who alleges negligence from recovering for purely economic loss.  (Mot. 26.)  However, WSGA's reliance on the economic loss rule is misplaced.  The rule more accurately stands for the proposition that there is no tort liability for economic loss caused by the negligent performance of a contract.  *JMP Securities LLP v. Erlich v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042-43 (N.D. Cal. 2012); *see also Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) ("The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.").  Given that there is no contract at issue here, the economic loss rule is inapplicable.

Nevertheless, Agape fails to allege sufficient facts to state a cause of action for negligent supervision because liability for negligent supervision requires "knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised."  *Burnett v. Nw. Trustee Servs., Inc.*, 2015 WL 566702, at *1 (C.D. Cal. Feb. 9, 2015) (citing *Noble v. Sears, Roebuck & Co.*, 33 Cal. App. 3d 654, 664 (1973)).  The FAC contains no factual allegations from which WSGA's knowledge could be inferred.  *See Farias v. Nat'l R.R. Passenger Corp.*, 2015 WL 4749002, at *7-8 (C.D. Cal. Aug. 11, 2015) (dismissing negligent supervision claim because plaintiff alleged no facts from which the court could reasonably infer that employer knew or should have known of employee's harassing conduct).  Given the allegation that WSGA entrusted Gridiron with its own bank accounts, the more plausible inference would be that WSGA had no knowledge of Gridiron's untrustworthiness.  Therefore, the Court **GRANTS** the motion to dismiss Agape's negligence claim with leave to amend.

### 3. Civil Theft / Conversion

"Conversion is the wrongful exercise of dominion over the property of another."  *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543 (1996).  The elements of conversion are: "(1) the plaintiff's ownership or right to possession of the

property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Village Group*, 43 Cal. App. 4th at 543-44).

WSGA argues that Agape's conversion claim must be dismissed because (1) the FAC fails to allege a specific, identifiable sum at issue and (2) WSGA was a "mere conduit" that inadvertently held Agape's funds.  (Mot. 27-30.)  The Court, however, declines to dismiss Agape's claim on these bases.

First, at the pleading stage, it is sufficient to allege that "approximately" $1.9 million of Agape's funds were converted.  *Orangi v. JP Morgan Chase Bank*, 2011 WL 1807174, at *2 (N.D. Cal. May 11, 2011) ("While [the plaintiff] may have to establish the specific amount allegedly taken in order to prove her case, she need not do so merely to state a claim [for conversion]."); *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010) ("Considering the liberal pleading requirements in federal court, . . . at the pleading stage it is only necessary for plaintiffs to allege an amount of money that is 'capable of identification.'" (citing *PCO, Inc.*, 150 Cal. App. 4th at 397)).

Second, WSGA's lack of knowledge of Gridiron's theft does not preclude a conversion claim against it.

> [T]he foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant.  It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.  Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action.

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998) (citing *Poggi v. Scott*, 167 Cal. 372, 375 (1914)) (reversing dismissal of conversion claim because it was irrelevant that defendant believed he had a security interest in the collateral he allegedly converted).  Agape alleges that money stolen from it was deposited into

WSGA's bank account and that WSGA spent a portion of the stolen funds to pay for its routine operating expenses.  (FAC ¶ 24.)  Such allegations are sufficient to state a claim for conversion.  Therefore, the Court **DENIES** the motion to dismiss Agape's conversion claim.

### 4.      Money Had and Received

To state a claim for money had and received, a plaintiff must allege that (1) the defendant received money that was intended to be used for the benefit of the plaintiff, (2) the money was not used for the benefit of the plaintiff, and (3) the defendant has not given the money to the plaintiff.  *Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010); *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994) (plaintiff must allege that the defendant is indebted to the plaintiff for a certain sum "for money had and received by the defendant for the use of the plaintiff.").  This claim "lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter."  *Gutierrez v*. Girardi, 194 Cal. App. 4th 925, 937 (2011) (citing Weiss *v. Marcus*, 51 Cal. App. 3d 590, 599 (1975)).

WSGA argues that this claim should be dismissed because (1) it did not benefit from or know about Gridiron's theft, and (2) the principle of equity bars Agape's claim where it failed to inspect its own bank account records, the same "misconduct" that Agape alleges against WSGA.  (Mot. 30-33.)  The Court disagrees.  The FAC sufficiently alleges that WSGA benefitted from Gridiron's theft.  (FAC ¶ 24 ("WSGA utilized a portion of the funds received from [Agape] to pay for its routine operating expenses . . . .").)  That WSGA was unaware that money stolen from Agape was deposited into its account does not necessarily preclude a claim for money had and received. *Twining v. Thompson*, 68 Cal. App. 2d 104, 114 (1945) (where defendant "had no knowledge of his wrongful detention" of plaintiff's money, plaintiff states a

claim for money had and received if a demand for its return was made).[4]  Finally, WSGA provides no case law support for the proposition that a claim for money had and received fails on equity grounds if the plaintiff is guilty of the same failings as the defendant or if the defendant was also a victim of the theft.  Thus, the Court **DENIES** the motion to dismiss Agape's claim for money had and received.

### 5.    Unjust Enrichment

WSGA argues that there is no independent cause of action in California for unjust enrichment.  (Mot. 33-34.)  Agape contends that California courts are split on the issue and that its unjust enrichment claim should be dismissed only if another cause of action for restitutionary damages survives the motion to dismiss.  (Opposition ["Opp."] 30.)  The Ninth Circuit recognizes a claim for unjust enrichment.  *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).  However, Agape's claim for money had and received, an action for restitutionary damages, survives the motion to dismiss.  *See Gutierrez*, 194 Cal. App. 4th at 937.  Therefore, the Court **GRANTS** the motion to dismiss Agape's unjust enrichment claim without leave to amend.

### 6.    Receipt of Stolen Property

WSGA contends that this claim should be dismissed because liability for receipt of stolen property is premised on actual knowledge of theft, which WSGA did not have.  (Mot. 35.)  California Penal Code section 496(a) states, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, *knowing the property to be so stolen or obtained*, . . . shall be punished by imprisonment . . . ."  (emphasis added).  Any person injured by a violation of section 496(a) may bring a civil action for three times the amount of actual damages.  *See* Cal. Pen. Code § 496(c).

The Court finds that WSGA cannot be held directly liable for receipt of stolen

---

[4] The Court assumes for purposes of deciding the motion to dismiss that Agape made a demand to WSGA for the return of the money that allegedly belongs to Agape.

property given its lack of knowledge, but that the FAC alleges sufficient facts to hold WSGA vicariously liable.  *See Lisa M.*, 12 Cal. 4th at 296-97 ("[A]n employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts.").  Therefore, the Court **DENIES** the motion to dismiss Agape's claim for receipt of stolen property.

### 7.      Statute of Limitations

WSGA argues that Agape's claims are at least partially time-barred given that Gridiron began stealing money from Agape in 2007.[5]  (Mot. 21-25; FAC ¶ 21.)  Agape contends that its facially time-barred claims are saved by the application of the discovery rule, fraudulent concealment, and equitable estoppel.  (Opp. 22-23.)

The Court finds that Agape's allegations are insufficient to support the application of these doctrines.  For these doctrines to apply, a plaintiff must plead facts to show that it failed to uncover the alleged wrongdoings *despite* reasonable diligence.  *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("In order to invoke the delayed discovery exception to the statute of limitations, the plaintiff must specifically plead facts which show . . . the inability to have made earlier discovery despite reasonable diligence.") (internal brackets omitted); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 933-34 (1994) (fraudulent concealment tolls the running of the statute until the wrongdoing is "discovered, or through the exercise of reasonable diligence[,] should have [been] discovered"); *Bernson*, 7 Cal. 4th at 936 (citing *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 99 (1976)) ("The rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence.").  Here, Agape fails to allege facts showing *any* diligence whatsoever over the course of seven years, during which Gridiron stole millions of

---

[5] Cal. Code Civ. Proc. § 335.1(two-year limitation for negligence); *Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir. 1965) (two-year limitation for money had and received); Cal. Code Civ. Proc. § 338(c) (three-year limitation for conversion); Cal. Pen. Code § 801 (three-year limitation for receipt of stolen property).

dollars from the church.

Moreover, to establish entitlement to tolling based on a defendant's alleged fraudulent concealment, a plaintiff must point to "some active conduct by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008). In other words, the alleged basis for tolling must not simply overlap the plaintiff's cause of action. *Id.* Agape argues that the FAC affirmatively pleaded fraudulent concealment in that it alleges that "Gridiron instructed [Agape's] book keeper not to open the bank statements and hold them for him" and that he "took blank checks from [Agape] with him when he left the church campus and returned to California." (Opp. 22; FAC ¶ 15, 16.) However, such conduct does not rise "above and beyond" Gridiron's theft and his efforts to hide it. Given that the Court grants leave to amend the FAC, however, Agape has another chance at alleging sufficient facts to support the application of the doctrines that may save its facially time-barred claims.

### 8.   Punitive Damages

As a preliminary matter, WSGA's Rule 12(f) motion to strike punitive damages from the FAC is procedurally improper. The Ninth Circuit construes Rule 12(f) narrowly, finding it improper to strike portions of the pleading if those portions are not: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). Under *Whittlestone*, it is procedurally improper to bring a motion to strike punitive damages because punitive damages do not fall under any of the Rule's five enumerated categories. *See e.g.*, *Rittenberg v. Decision One Mortg. Co.*, 2012 WL 10423361, at *5 (C.D. Cal. Oct. 12, 2012) (denying motion to strike punitive damages under *Whittlestone* because it is procedurally improper). Therefore, the Court shall convert WSGA's motion to strike into a Rule 12(b)(6) motion to dismiss. *See Redlands Country Club, Inc. v. Cont'l Cas. Co.*, 2011 U.S. Dist. LEXIS 155911, at

1   *16-17 (C.D. Cal. Jan. 28, 2011) (converting motion to strike punitive damages into

2   Rule 12(b)(6) motion to dismiss).

3        WSGA argues that the request for punitive damages should be stricken from the

4   FAC as to the claims for money had and received, unjust enrichment, and conversion.

5   Agape does not oppose striking punitive damages against WSGA for money had and

6   received and unjust enrichment.  (Opp. 3.)  It does, however, oppose striking punitive

7   damages against Gridiron and against WSGA as to the conversion claim.  (Opp. 4-5.)

8        The Court dismisses the request for punitive damages against WSGA as to the

9   claim for money had and received.  *See Steiner v. Rowley*, 35 Cal. 2d 713, 720 (1950)

10   (punitive damages cannot be recovered for money had and received).  Because the

11   unjust enrichment claim has been dismissed, a motion to dismiss punitive damages as

12   to this claim is moot.  The Court does not decide whether punitive damages shall be

13   dismissed against Gridiron as it is WSGA, not Gridiron, that brings this motion.

14        As to the conversion claim against WSGA, the Court dismisses the request for

15   punitive damages.  Under a theory of direct liability, punitive damages are awardable

16   for conversion if a plaintiff can make the "required showing of malice, fraud, or

17   oppression."  *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941).  Agape fails to allege

18   facts showing any malice, fraud, or oppression on the part of WSGA.  Under a theory

19   of vicarious liability, an employer cannot be held vicariously liable for punitive

20   damages unless the employer had advance knowledge of the unfitness of the employee

21   and was reckless in employing him, authorized or ratified the employee's wrongful

22   conduct, or the employee was hired in a managerial capacity and was acting in the

23   scope of employment.  *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1148-49

24   (1998); *see also* Cal. Civ. Code § 3294(b).  The FAC fails to plead facts showing that

25   any of these conditions are met here.  Accordingly, the Court **GRANTS** the motion to

26   dismiss claims for punitive damages with leave to amend.

27

28

# V.   CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** WSGA's Motion to Dismiss.  (ECF Nos. 12, 13.)  The Court denies the Motion as to all claims except for the claims for negligence, unjust enrichment, and punitive damages.  The negligence and punitive damages claims are dismissed with leave to amend.    Plaintiff shall have fifteen (15) days to file an amended complaint.


**IT IS SO ORDERED.**


February 16, 2016

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**