O

# United States District Court
# Central District of California

| | |
|---|---|
| AGAPE FAMILY WORSHIP CENTER, INC., <br><br>    Plaintiff, <br><br>    v. <br><br> DONALD RICHARD GRIDIRON, JR., and WESTERN STATES GOLF ASSOCIATION, <br><br>    Defendants. | Case No. 5:15-cv-1465-ODW-SPx <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WESTERN STATES GOLF ASSOCIATION'S MOTION TO DISMISS [35]** |

## I. INTRODUCTION

This case arises from the theft of almost $5 million from Agape Family Worship Center ("Agape") by Donald Richard Gridiron, Jr. ("Gridiron"), an accountant to both Agape and Western States Golf Association ("WSGA"). The Court previously granted in part and denied in part WSGA's motion to dismiss the First Amended Complaint ("FAC") on February 16, 2016. (ECF No. 31.) Pending before the Court is WSGA's Motion to Dismiss the Second Amended Complaint ("SAC"). (ECF No. 35.) For the reasons discussed below, the Court **GRANTS IN**

**PART** and **DENIES IN PART** the Motion to Dismiss without leave to amend.[1]

## II. FACTUAL BACKGROUND

Agape filed suit against Defendants Gridiron and WSGA on July 22, 2015. (ECF No. 1.) Agape originally commenced an action against Defendants on November 7, 2014 as an adversary proceeding in the United States Bankruptcy Court for the Central District of California, where Gridiron was a debtor in a Chapter 7 bankruptcy proceeding. (*Id.* ¶ 7.) The adversary proceeding in the bankruptcy court was dismissed on July 20, 2015 as a result of Gridiron's waiver of discharge in his bankruptcy case. (*Id.*)

After the Court granted in part and denied in part WSGA's motion to dismiss the FAC, Agape filed a Second Amended Complaint ("SAC") on March 2, 2016. (ECF No. 32.) In the SAC, Agape alleges that, over a period ranging from 2007 through early 2014, Gridiron was also WSGA's accountant and treasurer, and conducted all banking activities on behalf of WSGA. (*Id.* ¶¶ 23–24, 26.) In that capacity, Gridiron "funneled" approximately $1.9 million of Agape's stolen money through WSGA. (*Id.* ¶¶ 1, 32.) According to Agape, WSGA utilized a portion of the funds received from Agape to pay for its routine operating expenses when its cash flow was insufficient to cover such expenses. (*Id.* ¶ 32.)

Based on these allegations, Agape has asserted claims for breach of fiduciary duty and fraud against Gridiron. (*Id.* ¶¶ 34–43.) Against both Gridiron and WSGA, Agape has asserted claims for conversion, money had and received, and receipt of stolen property. (*Id.* ¶¶ 44–55.)

WSGA moved to dismiss the SAC on March 18, 2016. (Motion ["Mot."], ECF No. 35.) Timely oppositions and replies were filed. (ECF Nos. 40, 46.) The Motion to Dismiss is now before the Court for decision.

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion to Dismiss, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Essentially, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination as to whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Generally, a court should freely give leave to amend a complaint after granting a dismissal. Fed. R. Civ. P. 15(a). However, a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

### A. New Defenses

In its Motion to Dismiss the SAC, WSGA asserts additional defenses against

3

liability, namely, unclean hands, holder in due course, and dual agency, all of which WSGA could have raised in its motion to dismiss the FAC. District courts in the Ninth Circuit have held that a defendant is foreclosed from raising in a Rule 12(b)(6) motion arguments it should have asserted in a prior Rule 12(b)(6) motion. *See e.g. Hild v. Bank of America, N.A.*, No. EDCV 14–2126 JGB (SPx), 2015 WL 1813571, at *3–4 (C.D. Cal. Apr. 21, 2015); *Herron v. Best Buy Stores, LP*, No. 12–cv–02103–GEB–JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013); *Fed. Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) ("Although the Ninth Circuit has not had occasion to apply this principle, the weight of authority outside this circuit holds that where the complaint is amended after the defendant has filed a Rule 12(b) motion, the defendant may not thereafter file a second Rule 12(b) motion asserting objections and defenses that could have been asserted in the first motion.").

Other courts, on the other hand, have exercised their discretion and considered new defenses if they were not interposed for delay and the final disposition of the case would thereby be expedited. *See Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2016 WL 270952, at *7 (N.D. Cal. Jan. 22, 2016). Because there is no indication that WSGA has propounded new defenses to cause delay and the final disposition of the case would be expedited if WSGA's new arguments have merit, the Court exercises its discretion and considers them below.[2]

### 1.   Unclean Hands ("Sole Actor" Exception)

WSGA asserts the defense of unclean hands, arguing that Agape should be estopped from suing WSGA because Agape is imputed with the knowledge of Gridiron's wrongdoings. (Mot. 17–19.) A party may invoke the defense of unclean

---

[2] "Affirmative defenses may not ordinarily be raised on a motion to dismiss unless the affirmative defense raises no disputed issues of fact." *Chand v. Burlington Coat Factory of California, LLC*, No. CV F 13–2008 LJO JLT, 2014 WL 726837, at *4 (E.D. Cal. Feb. 24, 2014). Here, the Court considers WSGA's affirmative defenses at the pleading stage because they do not raise any disputed issues of fact.

4

hands against a principal by imputing to the principal the wrongful conduct of the agent. *In re Delano Retail Partners, LLC*, Bankruptcy No. 11–37711–B–7, 2014 WL 4966476, at * 5–6 (Bankr. E.D. Cal. Sept. 29, 2014). An exception to this defense exists where the actions of the agent were adverse to the interest of the principal, called the "adverse interest" exception. *Id.* at *6. That exception, however, is itself subject to the "sole actor" exception, under which the actions of the agent may be imputed to the principal even if the agent acts adversely to the principal's interest, if the agent and the principal are "one and the same." *Id.*; *see also Uecker v. Zentil*, 244 Cal. App. 4th 789, 798 (2016) ("Where the principal and agent are alter egos, there is no reason to apply an adverse interest exception to the normal rules imputing the agent's knowledge to the principal, because the party that should have been informed [of the fraudulent conduct] was the agent itself albeit in its capacity as principal."). In sum, WSGA's unclean hands defense involves imputing Gridiron's acts to Agape by invoking the "sole actor" exception to the adverse interest exception to the general rule that imputes an agent's wrongdoings to the principal.

WSGA argues that Agape *turned* Gridiron into a "sole actor" by delegating total authority over its finances to Gridiron. (Mot. 18–19.) The Court finds this argument unpersuasive. Even WSGA does not argue that Agape and Gridiron are alter egos of each other. In fact, Agape's allegations belie any such suggestion. (SAC ¶ 30 ("[Agape] is a faith-based organization"); ¶ 31 ("Following Gridiron's confession [of his theft] to [Agape's] Pastor, [Agape] retained legal counsel and other professionals to review its books and bank statements."). Moreover, WSGA does not provide, and the Court has not located, any case law support for the proposition that a voluntary delegation of authority to an agent can transform the agent into a "sole actor" for purposes of applying the "sole actor" exception.

### 2. Holder in Due Course

WSGA argues that it is a "holder in due course" of the checks it received from Agape, and is therefore entitled to their full amount. (Mot. 29–30.) A holder in due

5

course of a note is a holder who takes a note for value, in good faith, and without notice of any defenses to the payment of the note. Cal. Com. Code § 3302(a). "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." U.C.C. § 57.

WSGA does not qualify as a "holder in due course," however, for at least two reasons. First, WSGA cannot be deemed to have been without notice of any defenses to the payment of the note because WSGA is vicariously liable for Gridiron's wrongdoings, as the Court has already held, and Gridiron's knowledge is imputed to WSGA. Second, "[i]n the typical case the holder in due course is not the payee of the instrument" but rather "an immediate or remote transferee of the payee." Cal. Com. Code § 3302, comment. "Because it is extremely unlikely that the original payee will be able to establish such complete ignorance [of any potential defenses to payment] under normal circumstances, the advantages of holder-in-due-course status will apply to a payee only in a small percentage of cases." *Gentner & Co. v. Wells Fargo Bank*, 76 Cal. App. 4th 1165, 1169 (1999) (internal quotation marks omitted). Given that WSGA is a payee to whom knowledge of fraud is imputed, this case does not qualify as one of the small percentage of cases in which the holder-in-due-course status should apply to a payee.

### 3. Dual Agency

WSGA argues against vicarious liability on the basis that when a person is acting as a dual agent for two parties who are unaware of his agency with the other party, neither is charged with knowledge of the agent's actions. (Mot. 31–34.) None of the authorities that WSGA cites, however, stands for such a sweeping proposition. *Vice v. Thacker*, 30 Cal. 2d 84, 90–91 (1947) (finding dual agency as a basis for voiding a transaction involving the sale of merchandise and supplies); *Otsego Aviation Serv. v. Glens Falls Ins. Co.*, 277 A.D. 612, 618 (N.Y. 1951) (holding that an insurer

is not estopped from asserting defenses against coverage where an insurance agent worked for both insurer and insured). Given the limited holdings of these cases, the Court declines to apply this principal to the case at hand.

### B.     Statute of Limitations

WSGA argues that Agape's claims that accrued outside the limitations period are time-barred because Agape's lack of diligence in discovering Gridiron's theft precludes any tolling. (Mot. 20–24.) The Court agrees. For tolling doctrines such as the delayed discovery rule and fraudulent concealment to apply, a plaintiff must plead facts to show that it failed to uncover the alleged wrongdoings *despite* reasonable diligence. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("In order to invoke the delayed discovery exception to the statute of limitations, the plaintiff must specifically plead facts which show . . . the inability to have made earlier discovery despite reasonable diligence.") (internal brackets omitted); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 933–34 (1994) (fraudulent concealment tolls the running of the statute until the wrongdoing is "discovered, or through the exercise of reasonable diligence[,] should have [been] discovered"). While the SAC alleges additional facts illustrating Gridiron's acts of concealment, it fails to allege any facts showing diligence. Indeed, the SAC demonstrates a complete lack of diligence. Over the course of seven years, during which Gridiron stole almost $5 million from Agape, Agape allowed Gridiron to handle all financial and accounting matters on its behalf, (SAC ¶ 15), no one else at Agape reviewed any of Agape's bank statements, (*Id.* ¶ 19), and Agape routinely furnished Gridiron with blank checks to be used to pay Agape's bills, (*Id.* ¶ 20).

In an apparent attempt to justify the complete lack of supervision over Gridiron, Agape alleges that Gridiron, "the expert in church-related accounting, the son of a pastor, the controller of a church for a bishop, and the friend of the Senior Pastor, had earned the trust of [Agape]." (*Id.* ¶ 17.) It is "recognized in cases involving a fiduciary relationship that facts which would ordinarily require investigation may not

excite suspicion, and that the same degree of diligence is not required of the injured person." *Rawlings v. Harris*, 265 Cal. App. 2d 452, 457–58 (1968) (excusing plaintiff from greater diligence in discovering physician's negligence given the fiduciary relationship between physician and patient). Agape, however, alleges *no* diligence at all. Given Agape's complete lack of diligence, the Court finds that Agape's claims are time-barred as to the portions that accrued outside the limitations period for each claim.

### C. Remaining Claims

#### 1. Money Had and Received

WSGA contends that vicarious liability cannot attach to a claim for money had and received because it is a quasi-contractual claim and vicarious liability applies only to claims sounding in tort. (Mot. 25.) Agape, however, need not hold WSGA vicariously liable on this claim because Agape has stated a claim for direct liability. To state a claim for money had and received, a plaintiff must allege that (1) the defendant received money that was intended to be used for the benefit of the plaintiff, (2) the money was not used for the benefit of the plaintiff, and (3) the defendant has not given the money to the plaintiff. *Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010). Agape has sufficiently alleged these elements directly against WSGA. That WSGA was unaware that money stolen from Agape was deposited into its account does not preclude a claim for money had and received. *Twining v. Thompson*, 68 Cal. App. 2d 104, 114 (1945) (where defendant "had no knowledge of his wrongful detention" of plaintiff's money, plaintiff states a claim for money had and received if a demand for its return was made).

Because neither the delayed discovery rule nor fraudulent concealment applies to toll the statute of limitations, however, Agape may pursue its claim only as to the portion that accrued on or after November 7, 2012. (SAC ¶ 7 (Agape originally commenced this action as an adversary proceeding in the bankruptcy court on

8

November 7, 2014[3]).); *Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir. 1965) (two-year limitation for money had and received). The Court, therefore, **GRANTS without leave to amend** the motion to dismiss Agape's claim as to the portion that accrued before November 7, 2012.

### 2. Conversion

Agape has stated a claim for conversion, as the Court has already held in its prior order. Because neither the delayed discovery rule nor fraudulent concealment applies to toll the statute of limitations, however, Agape may pursue its claim only as to the portion that accrued on or after November 7, 2011. Cal. Code Civ. Proc. § 338(c) (three-year limitation for conversion). The Court, therefore, **GRANTS without leave to amend** the motion to dismiss Agape's claim as to the portion that accrued before November 7, 2011.

### 3. Receipt of Stolen Property

Agape has stated a claim for receipt of stolen property, as the Court has already held in its prior order. Because neither the delayed discovery rule nor fraudulent concealment applies to toll the statute of limitations, however, Agape may pursue its claim only as to the portion that accrued on or after November 7, 2011. Cal. Penal Code § 801 (three-year limitation for receipt of stolen property).

Citing to California Penal Code section 803(a), WSGA argues additionally that Agape's claim should relate back to July 22, 2015, the date on which this action was filed, and not November 7, 2014, the date on which Agape commenced its adversary proceeding in bankruptcy court. (Mot. 27.); Cal. Penal Code § 803(a) ("[e]xcept as

---

[3] For purposes of deciding the Motion to Dismiss, the Court finds that the statute of limitations on the claims in the SAC were tolled during the pendency of Agape's adversary proceeding in the bankruptcy court. WSGA may, however, challenge such tolling at a later stage in the case. *See Voiles v. Reavis*, No. 11–CV–1166 JLS (BGS), 2014 WL 5092664, at *6 (S.D. Cal. Mar. 3, 2014) (equitable tolling "is a fact-intensive inquiry that necessitates resort to the *specific* circumstances of the prior claim: parties involved, issues raised, evidence considered, and discovery conducted. Thus, the question ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion.") (emphasis in original) (internal quotation marks and citations omitted).

provided in this section, a limitation of time prescribed in this chapter is not tolled or extended for any reason."). This section, however, applies to criminal actions, not civil. *See* Cal. Penal Code §§ 799 *et seq.* ("Chapter 2. Time of Commencing Criminal Actions"). The Court, therefore, **GRANTS without leave to amend** the motion to dismiss Agape's claim as to the portion that accrued before November 7, 2011.

## V. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** WSGA's Motion to Dismiss. (ECF No. 35.) The Court **GRANTS** the Motion **without leave to amend** as to the portion of Agape's claim for money had and received that accrued before November 7, 2012, and as to the portions of its claims for conversion and receipt of stolen property that accrued before November 7, 2011. The Court **DENIES** the Motion as to the portion of Agape's claim for money had and received that accrued on or after November 7, 2012, and as to the portions of its claims for conversion and receipt of stolen property that accrued on or after November 7, 2011.

**IT IS SO ORDERED.**

May 24, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**