**O**

# United States District Court
# Central District of California

| | |
|---|---|
| AGAPE FAMILY WORSHIP CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONALD RICHARD GRIDIRON, JR.; and WESTERN STATES GOLF ASSOCIATION, <br><br> Defendants. | Case No. 5:15-cv-1465-ODW-SP <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [117]** |

## I. INTRODUCTION

Defendant Donald Richard Gridiron, Jr. stole substantial sums of money from Plaintiff Agape Family Worship Center. For his crime, Gridiron is now incarcerated and spending the remainder of his sentence in a federal penitentiary in California. Agape initiated this civil action to recover damages resulting from the theft. Before the Court is Agape's Motion for Summary Judgment. (ECF No. 117.) For the

foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Agape's Motion.[1]

## II. BACKGROUND

### A. Factual Background

Agape is a large, non-denominational Christian church located in Rahway, New Jersey. (Pl.'s Separate Statement of Uncontroverted Facts ("Pl.'s SUF") ¶ 1, ECF No. 117-2.) In 1992, Agape hired Gridiron to assist with its accounting needs. (*Id.* ¶ 5.) In 2007, Agape's Chief Financial Officer left the organization, and by 2008, Gridiron had taken over most of the organization's financial and accounting duties. (*Id.* ¶ 8.) Gridiron interviewed and hired a bookkeeper for Agape in 2007, and recommended that Agape stop its practice of conducting third-party audits. (*Id.*)

In March 2014, after Agape learned that one of its checks was returned for insufficient funds, Gridiron informed Agape's Senior Pastor Lawrence Powell that he had a severe gambling addiction and had stolen a large sum of money from the church. (*Id.* ¶ 19.) After an investigation, Agape learned that Gridiron had stolen hundreds of checks from 2007 until 2014. (*Id.* ¶ 20.) Gridiron began taking money from Agape in 2007 by check and wire transfer and continued to do so until early 2014. (*Id.*) Gridiron was able to cover up his actions by providing Agape's Board with false reports about the organization's finances. (*Id.*) Agape notified the Federal Bureau of Investigation about Gridiron's theft. (*Id.*)

Gridiron was charged with the crimes of wire fraud and false and fraudulent tax returns, in the United States District Court in New Jersey. (*Id.* ¶ 23.) He pleaded guilty to both counts. (*Id.* ¶ 24.) The presiding judge sentenced Gridiron to fifty-seven months in prison and ordered him to pay restitution to Agape and two of its insurance companies totaling $4,815,963.54. (*Id.* ¶ 25.)

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

**B. Procedural Background**

On July 22, 2015, Agape filed this case against Gridiron and Defendant Western States Golf Association ("WSGA"), seeking to recover the money that Gridiron stole from Agape and allegedly deposited into WSGA's accounts. (ECF No. 1.) In March 2017, Agape and WSGA settled their portion of the case, and on March 22, 2017, the Court dismissed WSGA. (ECF Nos. 102, 107, 108.)

Agape filed the pending Motion for Summary Judgment on December 19, 2017. (Mot., ECF No. 117.) Gridiron opposes Agape's Motion. (Opp'n, ECF No. 133.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,*

*Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Thus, the Court will grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. Additionally, a party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. 56-2. In determining any motion for summary judgment, "the Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence files in opposition to the motion. C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Agape requests the Court to enter summary judgment on each of its causes of action against Gridiron: Breach of Fiduciary Relationship and Duty, Fraud, Conversion, Money Had and Received, and Receipt of Stolen Property. Agape asks for its actual damages, $4,615,963.54, and treble damages pursuant to California Penal Code Section 496(c). Agape also asks the Court to enter a judgment awarding it punitive damages in the amount of two times its actual damages and the amount of attorneys' fees incurred in this case and the related criminal and bankruptcy proceedings, in the amount $356,085.40. Gridiron does not contest entry of summary judgment as to Agape's actual damages, $4,615,963.54, and offers to stipulate to such

4

a judgment.² Gridiron, however, opposes Agape's request for treble and punitive damages. He also opposes the attorneys' fees request, arguing that Agape is not entitled to its fees, and even if it were, it would only be entitled to those fees incurred in this action, and not the related criminal or bankruptcy proceedings. The Court first turns to Agape's Requests for Judicial Notice and then to the merits of Agape's Motion.

A.  **Requests for Judicial Notice**

Agape requests that the Court take judicial notice of different categories of documents. The first group are the documents from the criminal case against Gridiron, *United States of America v. Donald Gridiron, Jr.*, in the United States District Court, District of New Jersey, Case No. 2:15-cr-435-01. (Pl.'s Req. Judicial Notice, ECF No. 120.) Agape also requests the Court to take judicial notice of the Joint Stipulation of Uncontroverted Facts and Exhibits that Agape and WSGA entered to support their cross-motions for summary judgment in this action. (*Id.*) Agape references these documents as support throughout its Separate Statement of Uncontroverted Facts. (*See generally* Pl.'s SUF.) Gridiron objects to Agape's request, arguing that the Court can take judicial notice of the existence of these documents but not the truth of the matters contained therein. The Court agrees with Gridiron with respect to the majority of the documents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (explaining that when taking the judicial

---

² In Agape's Reply, it states that Gridiron's Opposition "unequivocally demonstrates that despite his professed acceptance and acknowledgment of his crime and the harm it caused to the members of [Agape], he still refuses to take responsibility for his abhorrent actions." (Reply 3, ECF No. 131.) The Court strongly disagrees. Gridiron does not dispute his crime or liability for the majority of the causes of actions Agape asserts, and he is willing to stipulate to entry of judgment for $4,615,963.54, the amount of Agape's actual damages. Gridiron's willingness to enter into such a stipulation is evidenced in other parts of the Court's record as well. (ECF Nos. 111, 112, 113.) This offer is even more incredible given the fact that Gridiron has already entered into a plea agreement where he must pay the same amount in restitution to Agape, which will effectively amount to a double recovery. In the Court's opinion, Gridiron's position is a far cry from an "ongoing desire to shirk responsibility to avoid the civil consequences of his criminal actions," as Agape characterizes it. (*See* Reply 3.) Such exaggerated rhetoric is unwarranted.

5

notice of public documents, the district court should do so "not for the truth of the facts recited therein," but for the existence of the document). Additionally, the Joint Stipulation entered into between Agape and WSGA is not binding on Gridiron, who was not a party to that agreement. The only documents the Court finds appropriate for judicial notice for both their existence and the facts contained therein are the two documents Gridiron signed and accepted: (1) his plea agreement and (2) the consent judgment. Therefore, the Court will not accept as true the facts in Agape's Separate Statement of Uncontroverted Facts supported only by documents of which the Court declines to take judicial notice.

**B.     Breach of Fiduciary Relationship and Duty**

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015) (quoting *Gutierrez v. Girardi*, 194 Cal. App. 925, 932 (2011)). The breach of fiduciary duty can be based upon either negligence or fraud. *Id.*

Agape claims that "[u]nder California law, accountants owe a fiduciary duty to their clients." (Mot. 7.) Agape cites one case for this proposition, *Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003). That line from *Wolf*, however, comes from the dissenting opinion, not the majority. That mistake aside, the Court notes that Gridiron does not dispute that he had a confidential relationship with Agape or that he breached that relationship. *See Hasso v. Hapke*, 227 Cal. App. 4th 107, 140 (2014) ("A fiduciary duty under common law may arise when one person enters into a confidential relationship with another.") (internal quotation marks omitted). It is undisputed that Gridiron provided accounting services to Agape for over twenty years and regularly met with Agape's Board and bookkeepers to discuss Agape's finances. (Pl.'s SUF ¶¶ 5–7.) Gridiron then began stealing from Agape, using his position as accountant to facilitate his theft and to conceal it. (*See* Pl.'s SUF ¶¶ 18–20.) The

1  Court finds that that there is no genuine issue of material fact with respect to Agape's
2  breach of fiduciary duty claim against Gridiron and **GRANTS** summary judgment as
3  to this claim.

4  **C.     Fraud**

5      The elements of a fraud claim are: (1) misrepresentation (false representation,
6  concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to
7  induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson
8  Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).  The Court finds that
9  Agape has presented evidence to satisfy these elements.  Gridiron prepared multiple
10 reports for Agape's Board misrepresenting its financial status in an effort to conceal
11 his theft.  Agape was justified on relying on those representations and suffered
12 damage as a result.  The Court **GRANTS** summary judgment as to this claim.

13 **D.     Conversion**

14     The elements of conversion are (1) the plaintiff's ownership or right to
15 possession of the property at the time of the conversion; (2) the defendant's
16 conversion by a wrongful act or disposition of property rights; and (3) damages.
17 *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 451 (1997).  The Court finds
18 there are no genuine issues of material fact as to this claim.  Gridiron stole money
19 belonging to Agape.  Agape has established the elements to satisfy its conversion
20 cause of action.  The Court **GRANTS** summary judgment as to this claim.

21 **E.     Money Had and Received**

22     To state a claim for money had and received, a plaintiff must allege that (1) the
23 defendant received money that was intended to be used for the benefit of the plaintiff,
24 (2) the money was not used for the benefit of the plaintiff, and (3) the defendant has
25 not given the money to the plaintiff. *Chase Inv. Servs. Corp. v. Law Offices of Jon
26 Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010); *Schultz v.
27 Harney*, 27 Cal. App. 4th 1611, 1623 (1994) (plaintiff must allege that the defendant
28 is indebted to the plaintiff for a certain sum "for money had and received by the

defendant for the use of the plaintiff."). This claim "lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011) (citing *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975)).

Gridiron took money belonging to Agape; he did not use that money for Agape's benefit; and he has not repaid that money to Agape. Gridiron proffers no competing facts. Therefore, the elements of this cause of action are met, and the Court **GRANTS** summary judgment as to this claim.

### F. Receipt of Stolen Property, Cal. Penal Code § 496(a)

Agape explains that although it addresses all of its causes of action in its Motion, Agape seeks "the entry of judgement on its claims under California Penal Code Section 496(c) because this cause of action provides for the greatest recovery" to Agape. (Mot. 1 n.2.) Under this section, a prevailing plaintiff can recover "three times the amount of actual damages . . . costs of suit, and reasonable attorney's fees." This is the only cause of action Gridiron opposes in his Opposition.

Section 496 makes it a crime to "buy[] or receive[] any property that has been stolen or that has been obtained in any manner constituting theft . . . knowing the property to be so stolen or obtained" or to "conceal[], sell[], withhold[], or aid[] in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Penal Code § 496(a). That section also provides that "a principal in the actual theft of the property may be convicted pursuant to this section. However, *no person may be convicted both pursuant to this section and of the theft of the same property*." *Id.* (emphasis added). Courts in this circuit have not fully developed the consequences of this provision for the purposes of assessing civil liability, when the person alleged to have violated § 496 was also the person who stole the underlying property. "If this principle were applied to the defendant's civil liability under section 496(c) . . . the defendant 'would not be liable for damages under the breach of contract and fraud causes of action *and* treble

damages under section 496.'" *Worldwide Travel, Incorporated v. Travelmate US, Inc.*, No. 14-cv-00155-BAS(DHB), 2016 WL 1241026, at *8 (S.D. Cal. Mar. 30, 2016) (quoting *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049 (2013)).

Gridiron asks the Court to follow the reasoning of the Northern District of California applied in *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273 (N.D. Cal. Oct. 12, 2016). In that case, the plaintiff contracted with the defendant software company to build a custom software system. *Id.* at *2. When the deal fell through, the plaintiff brought suit alleging causes of action for fraud and violation of § 496. *Id.* at *3. The court analyzed whether a person can be guilty both of stealing property—or in that case, fraudulently obtaining the property—and, by that same act of theft, of receiving (from himself) the now stolen goods. *Id.* at *15. Ultimately, the court found that "[t]he plain language of § 496(a) prevents [the plaintiff] from leveraging that alleged fraud into a damages-trebling § 496(a) violation" and dismissed the claim § 496 claim. *Id.*

In reaching this decision, the *Grouse* court distinguished another district court's decision in *Worldwide Travel, Incorporated v. Travelmate US, Inc.* and a decision from the California Court of Appeal in *Bell v. Feibush*. In *Worldwide Travel*, the court allowed the plaintiff's § 496 claim to survive a motion to dismiss even though the plaintiff also alleged that the defendant's theft by false pretense and fraudulent misrepresentation led to the defendant "receiving" the stolen property. 2016 WL 1241026, at *8. For this holding, the court relied extensively on *Bell v. Feibush*.

In *Bell*, the plaintiff alleged that she was induced by false pretenses to loan the defendant money that was never repaid, in violation of § 496. 212 Cal. App. 4th at 1043–44. The California Court of Appeal affirmed the entry of default judgment in favor of the plaintiff, and the award of damages on the plaintiff's breach of contract and fraud causes of action, as well as treble damages under § 496. *Id.* at 1050. The trial court limited the amount of damages to no more than the amount of treble damages allowed under § 496. *Id.* at 1049. The *Grouse River* court distinguished

9

*Bell*, and *Worldwide Travel* due to its reliance on *Bell*, because in that case the court found that the defendant "had violated section 496(a) not only be receiving property from [the plaintiff] by false pretense, but also by withholding that property when she asked for it back." *Grouse River*, 2016 WL 5930273, at *15 (quoting *Bell*, 212 Cal. App. 4th at 1049). The *Grouse* court explained that the "small additional conduct was enough to avoid § 496(a)'s dual-liability bar" in *Bell*. *Id.* In *Grouse*, however, the plaintiff could not proceed with its § 496 claim because that additional level of conduct—withholding the money after demand for payment—was not present. *Id.*

The Court finds the reasoning in *Grouse River* persuasive. Similar to the plaintiff in that case, Agape has not presented evidence that it asked for the money back and Gridiron refused. Additionally, in *Worldwide Travel*, the court was ruling on a motion to dismiss, where a court must consider that "in the civil context . . . one can plead theories of liability in the alternative." *Grouse River*, 2016 WL 5930273, at *15. In this case, we are well past the pleading stage. Plaintiff here seeks final adjudication and substantial damages on a motion for summary judgment, so the Court must look far more closely at what potential avenues are available for recovery. Moreover, in *Bell*, the trial court was ruling on a motion for default judgment where the defendant had failed to appear or oppose the plaintiff's case. 212 Cal. App. 4th at 2043. These circumstances are vastly different from the one here, where the Plaintiff, Agape, is requesting the Court to enter judgment and award damages on its claims over Gridiron's vigorous opposition to this cause of action.

Even more importantly, the dual liability bar in §496 seems to be particularly applicable to the facts of this case. Gridiron has been charged, pleaded guilty, and is currently serving out a sentence, for his principal role in the underlying theft. It appears to this Court to be wholly unjust to permit Agape to recover under § 496 and collect treble damages, when (1) Agape will have an opportunity to collect its actual damages; (2) Gridiron has been punished for his crime; and (3) the criminal court also entered a restitution order for the amount Gridiron stole.

Because the Court finds as a matter of law that Agape cannot recover on its § 496 claim, the Court **DENIES** summary judgment as to Agape's § 496 claim and **DISMISSES** that claim with prejudice.[3]

### G. Damages

Agape is entitled to a judgment for its actual damages, $4,615,963.54, because it has established liability on its claims for breach of fiduciary duty, fraud, conversion, and money had and received. In addition to its actual damages, Plaintiff also seeks an award for $9,231,927.08 in punitive damages.

Punitive damages are available for certain causes of action under California law "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). The Court finds that punitive damages are not appropriate, and would be excessive, in this case. Gridiron is currently in prison for his crimes against Agape and is subject to an outstanding restitution order to pay Agape the amount of its actual damages. Another court has already punished Gridiron for his wrongdoing. While civil liability is still appropriate, no further punishment is necessary or warranted.

Therefore, the Court **DENIES** Agape's request for punitive damages and **DISMISSES** its punitive damages claim with prejudice.

### H. Attorneys' Fees

Agape also seeks attorneys' fees of $356,085.40. Agape's claim for fees is based on § 496(c), which allows a civil plaintiff to recover its "reasonable attorney's fees." As discussed above, the Court dismisses Agape's § 496(c) claim, and therefore,

---

[3] Because both parties have identified the material facts and legal issues relevant to this cause of action, and the Court finds that Agape cannot succeed as a matter of law, the Court dismisses this claim on its own motion. *See* Fed. R. Civ. P. 56(f); *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a full and fair opportunity to ventilate the issues involved in the matter.") (internal quotation omitted).

it cannot recover any damages under that statute. Additionally, even if the Court were to find that an award of fees appropriate under §496, Agape has presented no evidence that the fees it incurred were "reasonable." The chart attached to Agape's Motion is laughable. It is merely a list of dates and dollar amounts. (Decl. of Matthew Davis, Ex. 1, ECF No. 119.) There is no way for the Court to determine who performed the work associated with dollar amounts, whether the work was legal in nature, or whether the amount of time spent or the amount charged was reasonable. Further, Agape acknowledges that the fees requested, $356,085.40, were incurred in the course of not only this action, but also the criminal matter and an associated bankruptcy case. (Mot. 13.) Agape presents no support that under § 496(c), a plaintiff is entitled to recover attorneys' fees from cases other than the pending action or that such an award would be reasonable.

Therefore, the Court **DENIES** Agape's request for attorneys' fees and **DISMISSES** its attorneys' fees claims with prejudice.

V. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Agape's Motion for Summary Judgment. (ECF No. 117.) On the Court's own motion, the Court **DISMISSES WITH PREJUDICE** Agape's § 496 claim and its claim for punitive damages and attorneys' fees. As all of the causes of action have been adjudicated, the Court will issue final judgment.

**IT IS SO ORDERED.**

May 30, 2018

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE